UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AKAMAI TECHNOLOGIES, INC., and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>      Plaintiffs,<br><br>  vs.<br><br>LIMELIGHT NETWORKS, INC.,<br><br>      Defendant. | Civil Action No.  06 CA 11109 RWZ |

**AKAMAI TECHNOLOGIES INC.'S SUPPLEMENTAL
MARKMAN MEMORANDUM REGARDING CLAIM TERM 1**

Pursuant to leave granted by the Court at the *Markman* hearing held May 17, 2007, Akamai Technologies, Inc. ("Akamai") submits this supplemental memorandum regarding Claim Term 1.[1]

|    | **Term to Be Construed** | **Akamai's Proposed Construction** | **Limelight's Proposed Construction** |
|----|---|---|---|
| 1. | A given object of a participating content provider is associated with an alphanumeric string. ('645 patent, claim 1) | An object provided by a content provider to a content delivery network that has some type of relationship with an alphanumeric string. | A particular object is associated with an alphanumeric string by combining it with the domain name conventionally used by the content provider to identify the object. |

The parties agree on the definition of "alphanumeric string."[2] The issue is whether the Court needs to construe the words "associated with." Akamai's proposed construction is consistent with the intrinsic evidence and attempts merely to substitute synonyms that may be more accessible to a lay audience. If the Court does not agree that this is the case, then the language at issue need not be construed at all, as the type of "association" called for by Claim 1 is made clear by the claim itself. *See,infra,* p. 3.

Limelight initially adopted the words "associated with" without further refinement. Then, in its 11th hour revision, Limelight took the position that "associated with" must be limited to a very specific method -- "by combining [the alphanumeric string] with the domain name conventionally used by the content provider to identify the object." Limelight's newly-proposed construction is one more attempt to read into a straightforward claim limitation words or phrases

---

[1] At 11:00 p.m., the evening prior to the *Markman* hearing, Limelight materially changed its proposed construction of Claim Term 1 to that reflected in the chart below.

[2] "Alphanumeric string" is agreed to mean "a character string of up to 24 characters drawn from the alphabet (a-z), digits (0-9), minus signs (-), and periods (.)" *See* Stipulated Order Establishing the Construction for Certain Claim Terms As Agreed Upon by the Parties, ¶ 8.

that are simply not present in the claim language.[3]  Limelight's justification for its construction – that it is looking to the written description for an explanation of how the claimed "association" is to be made[4] – is both insufficient as a matter of law and incorrect as a matter of fact.

The language of Claim 1, does not require any particular way of making the association between the "object" and the "alphanumeric string."  The language to be construed by the Court simply requires that there be an association, the characteristics of which are spelled out in the claim itself.  In determining the ordinary meaning of a claim term, the Federal Circuit has instructed us that "the context in which [the] term is used…can be highly instructive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).  Here, Claim 1 explicitly defines the purpose and required effect of the association between the alphanumeric string and the object to be delivered.  The string is used by the DNS to find an IP address associated with a content delivery network content server that can serve the object if the object is available for delivery:

> "responsive to a DNS query to the given object's associated alphanumeric string, ... having the given name server that receives the DNS query resolve the alphanumeric string into an IP address ..., wherein the IP address ... is associated with a content server ...
>
> "if the given object is available for delivery from the content server associated with the IP address, serving the given object from the content server."

'645 patent, col. 17, l. 66 - col. 18, l. 29.  Limelight ignores the language of the remainder of Claim 1 and instead attempts to impose a specific limit on the means of association.  Any such restriction is improper as a matter of law and must be rejected.  *See Phillips*, 415 F.3d at 1323.

---

[3] In all, Limelight asks the Court to construe five claim terms found in Claim 1 of the '645.  In each instance, Limelight proposes that limitations be read into the claim that are not there (and which it believes will help it avoid infringement).  Limelight's newly-proposed construction of Claim Term 1 is simply more of the same, which should be rejected as contrary to well-settled Federal Circuit precedent.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

[4] *See* Transcript of *Markman* Hearing held May 17, 2007 ("*Markman* Tr."), pp. 53:19 – 54:3 (attached hereto as Exhibit A).

Limelight's alleged justification for its proposed construction also is fatally flawed. At the *Markman* hearing, Limelight's counsel told the Court that its definition of "associated with" is necessary to enable the content server in the content delivery network to identify and find the object to be delivered once the request has been received by that content server.[5] Counsel for Limelight also told the Court that its construction was necessary to describe how a content server in the content delivery network retrieves the object from the content provider in the event the object had not previously been stored on the content server.[6] Both statements are incorrect.

First, as discussed above, the patents-in-suit teach (and the '645 patent claims) that an object is associated with an alphanumeric string such that the content provider's domain name system resolves the alphanumeric string to return the IP address of a content server in the content delivery network that can serve the object if it is available at that content server. *See* '645 patent (Claim 1), col. 17, ll. 50-58; col. 6, ll. 54-57 (URL to be "conditioned," *e.g.*, by inserting an alphanumeric string, so that object is served from a "global hosting server" (*i.e.*, a content delivery service provider's content server)). Thus, the patent makes clear that the purpose of the alphanumeric string is to facilitate identification of a server or servers in the content delivery network that can serve the object. *See id.,* col. 6, l. 54 – col. 8, l. 32. The patent does *not* teach that the alphanumeric string "identifies" the object to be served. That is the function of other portions of the URL, namely the path and filename.

Second, *separate* from the above, the patents-in-suit teach an embodiment of the invention in which the content provider's domain name is retained in the URL (albeit in a portion *not used by the domain name servers*). Content servers in the content delivery network may use that name to identify the content provider server that holds the "original" object, so that the

---

[5] *See Markman* Tr., pp. 48-49, 53-54 (attached hereto as Exhibits B and A, respectively).

[6] *See id.*

- 3 -

content servers can retrieve the content if it is not stored on the content server. [7] *See* '645 patent, col. 12, ll. 45-59. However, this separate step (how to get the object if the object is not found in the content delivery network's content server) is not part of the method in Claim 1 of the '645 patent (or any of the other claims that use the term "alphanumeric string"). In fact, other claim language in Claim 1 of the '645 patent makes clear that the claimed method covers the circumstance where the given object *is available for delivery from the content server*. *See* '645 patent, col. 18, ll. 27-29 ("if the given object is available for delivery from the content server associated with the IP address, serving the given object from the content server"). In other words, the claim does not say anything about what happens if the object is *not* available for delivery from the content server. Because Claim 1 does not address the step of retrieving content from a *content provider*, there is no reason (or basis) to include anything about that step in the claim construction of Claim 1.[8]

---

[7] There may be other methods for retrieving the object that do not require the insertion of the domain name in the URL as described in the preferred embodiment.

[8] Limelight's description of how the "alphanumeric string" is used in the patented system also underlies its tortured construction of "alternative domain name system" (Term 2). There, Limelight has argued for a definition that means a system "inconsistent with regular Internet specifications" -- i.e., incompatible with and not reliant on the root and top-level Internet domain name systems. *See Markman* Tr., p. 84 (attached hereto as Exhibit C). This contention also is flatly wrong. First, the preferred embodiment of the '645 patent clearly involves the use of a content delivery network that relies on the Internet DNS. *See e.g.* '645 patent col. 5, ll. 4-5, 14-16. As a matter of law, therefore, the Court cannot adopt the construction proposed by Limelight. *See Chimie v. PPG Industries, Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) ("As we have frequently stated, a construction that would not read on the preferred embodiment ... would rarely if ever [be] correct and would require highly persuasive evidentiary support.") (citations omitted). Second, the parties agreed to a definition of "alphanumeric string" and - as the prosecution history makes clear - that definition comes straight from an Internet RFC. *See* April 3, 2006 Preliminary Amendment to '645 patent application, p. 6, ll. 19-29. Because the "alternative DNS" must resolve these standard alphanumeric strings, it has to be operating in a manner consistent with Internet standards. Finally, Claim 1 explicitly states that the "alternative" DNS is used in the context of "a wide area network *in which an Internet domain name system* is useable to resolve DNS queries directed to participating content provider content that is available from participating content provider sites." 645 patent, col. 17, ll. 39-42. Therefore, it is not possible to read the claim coherently if the "alternative DNS" is "inconsistent" with the "Internet DNS" also identified. Moreover, when read in context the meaning of "alternative domain name system (DNS) distinct from the Internet Domain name system and any client local name server" is plain. "Alternative" simply means controlled by the content delivery service provider. "[D]istinct from the Internet Domain name system and any client local name server" means "neither the root, top-level nor the client local domain name servers" (even if one or more of them happens to be controlled by the content delivery network). Thus, if Term 2 need be construed at all, the construction

Thus, the written description shows an example of a preferred embodiment in which a modified URL contains both the alphanumeric string and a "domain name conventionally used." The written description, however, makes absolutely clear that the "alphanumeric string" and the "domain name conventionally used" each appears in the URL for different reasons, and *not* as the result of any kind of combination to "identify" an object. A combination of the alphanumeric string and the domain name (as suggested by Limelight) in and of itself is not meaningful from a technical perspective and is unrelated to the association of the alphanumeric string with the object.

Limelight's proposed construction should be seen for what it is, a not-so-subtle attempt to conflate two separate features of a preferred embodiment and to then read the resulting combination into Claim 1. The feature of the preferred embodiment wherein an alphanumeric string (*e.g.*, ghost1467.ghosting.akamai.com) is inserted before a domain name (*e.g.*, "www.provider.com/TECH/images/space.story.gif) provides useful advantages where the content is not available from the content delivery network content server. However, as a matter of law, the disclosure of that embodiment does not restrict the otherwise ordinary meaning of the words of Claim 1, which do not claim the portion of the disclosed method relating to the use of a "domain name of the content provider." *See Phillips*, 415 F.3d at 1324. Limelight's proposed construction must, therefore, be rejected.

---

"one or more domain name servers other than the root, top-level or the client local domain name servers, which is controlled by the content delivery service provider" would be an appropriate construction.

        Respectfully submitted,

        AKAMAI TECHNOLOGIES, INC., and
        MASSACHUSETTS INSTITUTE OF
        TECHNOLOGY,

        By their attorneys,

        <u>/s/ Carlos Perez-Albuerne</u>
        Robert S. Frank, Jr. (BBO #177240)
        Sarah Chapin Columbia (BBO #550155)
        Carlos Perez-Albuerne (BBO #640446)
        G. Mark Edgarton (BBO #657593)
        CHOATE, HALL & STEWART LLP
        Two International Place
        Boston, Massachusetts 02110
        Tel:  (617) 248-5000

Dated:  May 30, 2007

**CERTIFICATE OF SERVICE**

    I, Carlos Perez-Albuerne, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 30, 2007.

                                                     /s/ Carlos Perez-Albuerne

4214361v5