UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 06-11109-RWZ


AKAMAI TECHNOLOGIES, INC., et al.

v.

LIMELIGHT NETWORKS, INC.


ORDER ON MOTIONS IN LIMINE

February 8, 2008

ZOBEL, D.J.


**I.      Motion in Limine to Preclude Any Evidence or Argument that the '598 Patent Discloses the Use of DNS to Select a Content Server (Docket # 139)**

Akamai moves to preclude Limelight from arguing that the Farber patent (the "'598 Patent") invalidates its '703 Patent by anticipation because the Federal Circuit stated in an earlier case:

> The '598 patent does not disclose or fairly suggest that the load balancing software can be placed at the DNS servers.

Akamai Tech., Inc. v. Cable & Wireless Internet Serv., Inc., 344 F.3d 1186, 1191 (Fed. Cir. 2003) (hereinafter "Digital Island").

However, this statement is a factual finding, and one apparently agreed to by the parties in Digital Island, not an issue of law decided by the court.  There is no indication in the appellate court's opinion that it did anything other than accept the defendant's statement that "the 598 patent does not explicitly disclose the placement of load

balancing software at the DNS server . . . ." Id. at 1193; see also id. ("[I]n its brief on appeal, Akamai states . . . C&W counsel told the jury the difference [between the '598 patent and the '703 patent] involves the fact that selection of the best computer server to deliver the embedded objects of the web page is done in the 598 prior art patent by 'software ... located at the origin server' whereas selection of the best computer server to deliver the content is done in the 703 patent 'by software located at the DNS....'"); id. (further quoting Akamai's brief as stating that this difference "was acknowledged and admitted by everyone throughout the trial . . . .") (emphasis in original); id. ("[T]he parties have narrowed the disputed issues of validity to a single point of contention - the placement of the load balancing software at either the DNS servers or the origin server."); id. at 1195 ("It is not disputed that the prior art (the defendant's 598 patent) does not disclose and does not embody the DNS lookup of the Akamai 703 patent.") (Newman, J., dissenting).

In that case, there was no reason for the Federal Circuit to challenge, or even consider, a fact agreed to by the parties. Limelight, however, was not a party to the earlier case and cannot be bound by admissions made by an unrelated defendant. In addition, different claims are asserted in the instant case. If Limelight believes that the invention disclosed in the claims asserted by Akamai in the instant case was anticipated by the '598 patent, it has the right to present its evidence and argument before the jury for their determination. See Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 627 (Fed. Cir. 1984) ("The presumption of validity is a clear statutory procedural device. It is not augmented by an earlier adjudication of patent 'validity.' A

patent is not held valid for all purposes but, rather, not invalid on the record before the court."); see also Digital Island, 344 F.3d at 1195 n.4 (describing the "question of anticipation" as "factual").

Accordingly, the motion (Docket # 139) is DENIED.


**II.    Motion in Limine to Exclude Reference to the Verdict and Rulings in Prior Litigation (Docket # 141)**

Akamai moves to exclude reference to the verdict and rulings in prior litigation involving the patents-in-suit, specifically the Digital Island case and an earlier case involving Speedera Networks, Inc. ("Speedera").  It appears that Limelight seeks to use this information for two purposes; (1) to challenge Akamai's interpretation of the meaning of the word "optimal" in claims 19 and 34 of the '703 Patent; and (2) to support its claims that it did not have the requisite intent to induce infringement.[1]

Because the court has construed the meaning of the word "optimal" as used in the asserted claims (see Order Construing Stipulated Term, Feb. 8, 2008), the issue is "whether the Limelight system returns an optimal server under [the court's] construction."  (Id. at 4.)  The verdict, attorney argument and rulings from prior cases on the meaning of "optimal" are not relevant to this determination.  Therefore, they are not admissible for the purpose of showing invalidity.  See Fed. R. Evid. 402.

Limelight also argues that reference to the prior lawsuits is relevant to its

---

[1] Limelight also argues that this evidence is relevant to willfulness and to its equitable defenses.  Because Akamai indicated at the February 5th hearing that it did not intend to argue wilfulness, and because Limelight's equitable defenses will be tried to the court at a later date, I need not address those issues here.

defense against Akamai's claim of inducement.[2]  The Federal Circuit, in a recent en banc opinion, held that inducement "requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006).  In both the Digital Island and Speedera litigation, Akamai brought an infringement action against each defendant first, then subsequently acquired each company.  In the instant case, Akamai first entered into acquisition discussions with Limelight, then, when those negotiations failed, brought suit.  Limelight argues that a reasonable jury could conclude that Limelight believed it did not infringe or cause others to infringe Akamai's patents because of Akamai's prior history of bringing suit against infringers before negotiating a settlement involving acquisition of the infringing party.  I agree that this evidence would be relevant to a defense against inducement.

However, Akamai has informed the court that it is now willing to forgo its inducement claim as well as its wilfulness claim, in which case the fact of the prior litigation is no longer relevant to any of the issues in the jury trial.  (See Letter from Akamai's Counsel, Feb. 7, 2008.)  Therefore, to the extent that wilfulness and/or inducement is not an issue,[3] Akamai's motion to exclude (Docket # 141) is ALLOWED.

---

[2] "Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).

[3] Akamai stated that it was willing to forgo its inducement claim if the court was otherwise prepared to grant its motions to exclude evidence on the prior ligitation (Docket # 141) and Akamai's pre-litigation business discussions with Limelight (Docket #169).  However, as discussed infra, the court is not precluding evidence of the parties' business discussions, so it is unclear how Akamai plans to proceed on its claim of inducement.

III.    **Motion in Limine No. 2 to Preclude Akamai's Expert Dr. Mark Crovella From Offering Opinions At Trial Not Previously Disclosed Or Based On Undisclosed Data (Docket # 144)**

Limelight moves to preclude Akamai's expert, Dr. Mark Crovella ("Crovella") from offering opinions based on his analysis of raw data that Limelight alleges should have been provided to it prior to Crovella's deposition.[4]  Akamai disputes that it was required by the parties' agreement to provide the data and, in any event, provided the data as soon as it became aware that Limelight wanted it.

It appears that Limelight has had the raw data it believes it needs to rebut Crovella's opinion on closeness since January 10, 2008.  Limelight describes the late disclosure as prejudicial to it because not enough time is available for its expert, Dr. John Kelly ("Kelly"), to prepare a supplemental rebuttal report and appear at a deposition on that rebuttal.  Prejudice arises only if the lack of a rebuttal precludes Limelight from contesting Crovella's conclusions to the jury.

Therefore, Crovella may testify to his conclusions concerning closeness, however, Limelight may cross-examine him on his methodology and analysis, on the specifics of the raw data and how it was obtained and whether the data provided to Limelight is identical to the data he used to form his opinions.

Kelly may offer his opinion concerning Crovella's methodology, analysis or collection of the raw data, as well on Crovella's conclusion reached from that analysis. In addition, Kelly may testify concerning his own analysis of the same data and any

---

[4] A second issue in the motion concerning Crovella's opinion on equivalency on certain limitations of claims 8 and 18 of the '413 Patent is moot because no claims of that patent will go to trial.

similar or differing conclusions he reached based on his analysis.

Accordingly, the motion (Docket # 144) is DENIED.


**IV.    Motion in Limine No. 6 to Preclude Akamai From Offering Inadmissible Testimony From Prior and Present Litigation Proceedings (Docket # 147)**

Limelight moves to preclude Akamai from offering into evidence documents and

portions of transcripts from an earlier case against defendant Digital Island.  It argues

that the documents and transcripts are hearsay being offered for the truth of their

contents and that, since it was not a party to the earlier case, it had no opportunity to

cross-examine the witnesses who testified or to challenge the authentication of the

documents being offered.[5]

It is a long-standing rule "that the party to be affected by the evidence of

depositions, or some person in privity with him, should have had an opportunity of

cross-examining the witnesses with reference to the subject-matter."  Rutherford v.

Geddes, 71 U.S. 220, 222 (1866).  This rule is captured in the Federal Rules of Civil

Procedure which only allow a deposition to be used in a later action if it "involv[es] the

same subject matter between the same parties, or their representatives or successors

in interest . . . ."  Fed. R. Civ. P. 32(a)(8) (emphasis added).  The Federal Rules of

Evidence similarly allow admission of trial or deposition from a prior proceeding of an

unavailable declarant only "if the party against whom the testimony is now offered, or,

---

[5] The court has not received an opposition to Limelight's motion, and there is no record in the docket of an opposition being filed.

in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1).

Here, Limelight is neither a successor in interest to Digital Island nor Speedera. It was not present at the depositions or trials from which Akamai seeks to introduce testimony. Therefore, any documents that Akamai seeks to introduce in the instant case are subject to the normal rules of evidence governing admissibility and must be authenticated anew. In addition, any testimony from a trial or deposition to which Limelight was not a party is not admissible for showing the truth of the statements contained within it.

Limelight also objects to certain deposition testimony of its Chairman and CEO, Jeff Lunsford, that Akamai apparently intends to offer to the jury on the grounds that it lacks foundation, is not relevant and is unduly prejudicial. These are objections the court is best able to consider when presented with the transcript marked with the deposition testimony the opposing party is proffering.

Accordingly, Limelight's motion (Docket # 147) to preclude is ALLOWED IN PART and DENIED IN PART.

## V.     Motion in Limine No. 4 to Preclude Dr. Kevin Jeffay From Testifying About Certain Perceived Deficiencies in the Prior Art (Docket # 151)

Limelight moves to preclude testimony from Akamai's expert Kevin Jeffay ("Jeffay") concerning the lack of commercial success and certain technical deficiencies of the prior art. In particular, Limelight argues that Jeffay has no factual basis for his

opinions concerning commercial success and, in any event, the testimony on both issues is not relevant.

There is no question that commercial success, along with long-felt but unsolved need and failure of others, is one of the "secondary considerations" that the Supreme Court has identified as "indicia of obviousness or nonobviousness." Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966).[6]  Limelight, however, appears concerned that allowing Jeffay's testimony will confuse the jury into believing that lack of commercial success of the prior art also reduces its anticipatory value or that the jury will put too much emphasis on commercial success in deciding obviousness.

The commercial success of Akamai's product and the commercial failure of the prior art is relevant to obviousness; therefore, Akamai is entitled to present evidence on these issues.  Limelight is, of course, entitled to present its own expert to opine that the primary factors are so in favor of an obviousness finding that the secondary factors play no part in that determination.  See In re Queener, 796 F.2d 461, 463-64 (Fed. Cir. 1986).  It is the court's responsibility to ensure that the jury understands the legal relevance and relative importance of these issues to invalidity through proper instruction.

To the extent that Limelight believes that Jeffay's opinions are based on a weak foundation, it is free to demonstrate such a deficiency to the jury on cross-examination.

---

[6] Limelight's reliance on an unpublished opinion of the Federal Circuit to support its contention that "the commercial success (or lack thereof) of prior art is irrelevant to invalidity" is unpersuasive.  (Docket # 151, 4 (citing Diversified Prod. Corp. v. U.S. Intern. Trade Com'n, 1987 WL 37691 (Fed. Cir. June 17, 1987).)

However, the rules do allow an expert to rely on information provided by others, so the fact that he has "done no investigation" personally is insufficient to preclude his testimony.  (Docket # 151, 4.)  Finally, as Akamai points out, the Federal Circuit has held that prior art references that "teach away" from the patented invention are probative of non-obviousness.  See W.L. Gore & Assoc., Inc. v. Garlock, Inc., 721 F.2d 1540, 1550 (Fed. Cir. 1983).  Therefore, Akamai may present expert testimony comparing the prior art with the asserted claims in defense of their validity.  Again, it is the duty of the court to instruct the jury on the legal relevance of this testimony.

Accordingly, Limelight's motion (Docket # 151) is DENIED.

## VI.    Motion in Limine to Preclude Limelight From Arguing That the AT&T Memorandum and IBM Research Report Constitute Prior Art (Docket # 154)[7]

Akamai moves the court to exclude from the jury's consideration of invalidity two reports on the ground that there is insufficient evidence that they were published at least one year before Akamai's patent applications were filed.[8]  Akamai argues that the correct priority date for this comparison is the date of its provisional application, July

---

[7] It is unclear from the parties' memoranda whether this motion is relevant to the '703 Patent claims, the only ones remaining in the case.  The motion does not discuss to which patent it is addressed, and the opposition only references the '413 claims.

[8] United State law provides that "a person shall be entitled to a patent unless--"

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . .

35 U.S.C. § 102.

9

14, 1998, and therefore any relevant document must have been published earlier than July 14, 1997.  The AT&T Memorandum is marked with a date of March 5, 1998, while the IBM Research Report bears the date "(07/29/97)."  Akamai asserts that these dates fail to meet the statutory requirement and, in any event, that Limelight will be unable to prove the dates and the fact of publication based on the available evidence.

Limelight argues that not only is the evidence adequate to prove the date and the publication of the two documents, but that the proper priority date is the date of the patent application because the claims being asserted were not adequately disclosed in the provisional application.  See New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1294 (Fed. Cir. 2002) ("[F]or the non-provisional utility application to be afforded the priority date of the provisional application, . . . the written description of the provisional must adequately support the claims of the non-provisional application . . . .").  The question of the date and the publication of the references is an issue of fact, as is the question whether the provisional application should be afforded priority.  Id.  The jury will have to decide these questions before it can decide the ultimate factual issue: whether the invention is described in the publications.  See Faulkner v. Gibbs, 170 F.2d 34, 37 (9th Cir. 1948), affirmed, 338 U.S. 267 (1949).

Accordingly, Akamai's motion (Docket # 154) is DENIED.

VII.    **Motion in Limine to Exclude Evidence Regarding the Parties Pre-litigation Business Discussions (Docket # 169)**

Akamai moves to preclude Limelight from presenting any evidence of the parties pre-litigation discussion concerning a possible acquisition of Limelight by Akamai.

10

Akamai's only objection to the admission of this evidence is relevance.  (See Docket #

169.)  Limelight argues that such evidence is relevant to wilfulness, inducement,

damages and its equitable defenses.  As Akamai has agreed to forgo its claims for

inducement and wilfulness if this motion is otherwise allowed, and the equitable

defenses are to be tried to the court at a later date, see supra Part II, the only question

is the relevance of the evidence toward establishing damages.

Limelight first points out that the "commercial relationship between the licensor

and licensee" is one of the Georgia Pacific factors in determining a reasonable royalty.

Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)

(describing "whether they are competitors in the same territory in the same line of

business; or whether they are inventor and promoter" as relevant issues).  In addition,

Limelight argues that the fact that Akamai was interested in acquiring Limelight's

technology is relevant to showing that Akamai could not handle additional capacity on

its own and/or that Limelight's products were differentiated from its own, and thus did

not reduce the volume of Akamai's sales of its own services.  Both of these issues are

relevant to a computation of lost profits due to infringement.  Therefore, Limelight's

expert's should be able to opine on their interpretation of the acquisition discussions to

the issue of damages.[9]

Accordingly, Akamai's motion (Docket # 169) is DENIED.

---

[9] It is unclear from Akamai's letter to the court whether it is willing to forgo its
inducement claim if this evidence is allowed.  As discussed supra Part II, evidence of
these discussions is also relevant to the jury's determination of Limelight's intent to
induce infringement and may also be admitted for that purpose if Akamai asserts an
inducement claim.

_February 8, 2008__                    _____/s/Rya W. Zobel      _____
         DATE                                   RYA W. ZOBEL
                              UNITED STATES DISTRICT JUDGE