# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AKAMAI TECHNOLOGIES, INC., and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>        Plaintiffs,<br><br>  v.<br><br>LIMELIGHT NETWORKS, INC.,<br><br>        Defendant. | Civil Action No. 1:06-cv-11109 RWZ |

## LIMELIGHT NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 50 AND 59
## [LEAVE TO FILE GRANTED APRIL 23, 2008]

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

III.  DISCUSSION ...................................................................................................... 4

    A.    A New Trial is Necessary Because This Court's Claim Construction Order
Was Disregarded, Certain Terms Were Not Construed, and the
Construction of "Optimal" Was Prejudicially Confusing ....................................... 4

        1.    A New Trial is Necessary Because of Inappropriate Argument and
Jury Instructions Regarding the Claim Construction for the
"Tagging" Step .................................................................................... 4

            (A)    A New Trial is Necessary Because Akamai's "Tagging"
Theories Were Improper and Unfairly Prejudicial to
Limelight .......................................................................... 5

            (B)    A New Trial is Necessary Because Limelight's Proposed
"Tagging" Jury Instructions Were Prejudicially Omitted ............... 8

        2.    A New Trial is Necessary Because of a Failure to Construe the "As
A Function Of" and "Current Internet Traffic Conditions"
Limitations. ........................................................................................ 10

        3.    A New Trial is Necessary Because Akamai's Arguments and the
Construction of "Optimal" Were Prejudicially Confusing. ....................... 11

    B.    Akamai's Use of Dr. Leighton to Provide Expert Testimony Directly
Violated the Discovery Master's and This Court's Orders and Necessitates
a New Trial. .................................................................................................. 14

    C.    A New Trial is Necessary Because "Close" as Argued by Akamai is
Indefinite. ..................................................................................................... 15

    D.    A New Trial is Necessary Because Certain Jury Instructions Were
Improper and Had a Prejudicial Effect. .............................................................. 17

        1.    The Divided Infringement Instructions Prejudiced Limelight on
Each Claim Asserted. ........................................................................... 17

        2.    The Obviousness Instruction Did Not Comply With KSR. ....................... 19

        3.    Other Key Instructions Were Omitted, Substantially Prejudicing
Limelight .......................................................................................... 21

E.      A New Trial is Necessary Because the Answer Provided to the Jury's
        Question During Deliberations Was Improper. ......................................................23

F.      A New Trial is Necessary as an Alternative if Judgment as a Matter of
        Law is Not Granted. ............................................................................................26

IV.    CONCLUSION.............................................................................................................27

K&E 12570414.8

## TABLE OF AUTHORITIES

**Page**

**Cases**

Altiris, Inc. v. Symantec Corp.
    318 F.3d 1363 (Fed. Cir. 2003)........................................................................ 21

Am. Seating Co. v. USSC Group, Inc.
    514 F.3d 1262 (Fed. Cir. 2008)........................................................................ 23

Aro Mfg. Co. v. Convertible Top Replacement Co.
    377 U.S. 476 (1964)........................................................................................ 23

BMC Res., Inc. v. Paymentech, L.P.
    498 F.3d 1373 (Fed. Cir. 2007)........................................................................ 17

BMC Resources, Inc. v. Paymentech, L.P.
    No. 3:03-cv-1028-M, 2006 WL 1450480 (N.D. Tex. May 24, 2006) ............... 18

Brennan v. Norton
    350 F.3d 399 (3rd Cir. 2003) ...................................................................... 3, 26

Cerqueira v. Am. Airlines, Inc.
    No. 07-1824, 2008 WL 104105 (1st Cir. Jan. 10, 2008) ................. 10, 20, 21, 26

Christopher v. Florida
    449 F.3d 1360 (11th Cir. 2006) ...................................................................... 3, 7

Cytologix Corp. v. Ventana Med. Sys., Inc.
    424 F.3d 1168 (Fed. Cir. 2005)......................................................................... 6

Datamize, LLC v. Plumtree Software, Inc.
    417 F.3d 1342 (Fed. Cir. 2005)........................................................................ 16

Fineman v. Armstrong World Indus., Inc.
    980 F.2d 171 (3rd Cir. 1992) ............................................................................ 3

Greenleaf v. Garlock, Inc.
    174 F.3d 352 (3rd Cir. 1999) ............................................................................ 3

Halliburton Energy Servs., Inc. v. M-I LLC
    514 F.3d 1244 (Fed. Cir. 2008)........................................................................ 16

Interactive Gift Exp., Inc. v. Compuserve Inc.
    256 F.3d 1323 (Fed. Cir. 2001)........................................................................ 21

Kearns v. Keystone Shipping Co.
    863 F.2d 177 (1st Cir. 1988)............................................................................ 26

KSR Int'l Co. v. Teleflex Inc.
　　550 U.S. ___, 127 S.Ct. 1727 (2007)........................................................ 19, 20

Levin v. Dalva Bros, Inc.
　　459 F.3d 68 (1st Cir. 2006)............................................................ 9, 17, 19, 26

Loral Fairchild Corp. v. Sony Corp.
　　181 F.3d 1313 (Fed. Cir. 1999).................................................................. 21, 22

Lucent Tech., Inc. v. Extreme Networks, Inc.
　　229 F.R.D. 459 (D. Del. 2005) ...................................................................... 3, 6

Manley v. Ambase Corp.
　　337 F.3d 237 (2nd Cir. 2003)......................................................................... 3, 26

Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.
　　152 F.3d 1368 (Fed. Cir. 1998)................................................................... 21, 22

Markman v. Westview Instruments, Inc.
　　517 U.S. 370 (1996).......................................................................................... 4, 11

Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems Gmbh
　　No. 98-cv-01072-RPM, 2008 WL 410413 (D. Colo. Feb. 12, 2008)................. 7

NTP, Inc. v. Research In Motion, Ltd.
　　418 F.3d 1282 (Fed. Cir. 2005)........................................................................... 17

Oiness v. Walgreen Co.
　　88 F.3d 1025 (Fed. Cir. 1996)............................................................................ 22

Payton v. Abbott Labs
　　780 F.2d 147 (1st Cir. 1985)....................................................................... passim

Phav v. Trueblood, Inc.
　　915 F.2d 764 (1st Cir. 1990)..................................................................... 2, 15, 26

Rite-Hite Corp. v. Kelley Co., Inc.
　　56 F.3d 1538 (Fed. Cir. 1995)........................................................................... 23

Rivera Castillo v. Autokirey, Inc.
　　379 F.3d 4 (1st Cir. 2004)..................................................................................... 2

Scimed Life Sys., Inc. v. Johnson & Johnson
　　225 F. Supp. 2d 422 (D. Del. 2002), affirmed, 87 F.App'x 729 (Fed. Cir. 2004).............. 3

Seachange Int'l., Inc. v. C-COR, Inc.
　　413 F.3d 1361 (Fed. Cir. 2005)................................................................... passim

iv

Shockley v. Arcan, Inc.
    248 F.3d 1349 (Fed. Cir. 2001)......................................................................... 22

Sulzer Textil A.G. v. Picanol N.V.
    358 F.3d 1356 (Fed. Cir. 2004)......................................................... 4, 9, 10, 11

U.S. Surgical Corp. v. Ethicon, Inc.
    103 F.3d 1554 (Fed. Cir. 1997)........................................................................... 4

Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.
    308 F.3d 1167 (Fed. Cir. 2002)......................................................................... 26

Union Pac. Res. Co. v. Chesapeake Energy Corp.
    236 F.3d 684 (Fed. Cir. 2001)........................................................................... 16

Warner v. Rossignol
    538 F.2d 910 (1st Cir. 1976)......................................................................... 3, 17

K&E 12570414.8

## I.      INTRODUCTION

Limelight respectfully moves this Court to grant a new trial.

**First**, a new trial is necessary because this Court's claim construction was ignored, misapplied, and misrepresented in presentations to the jury so as to be misleading and confusing to the jury:

- This Court's claim construction that requires the virtual server hostname to be prepended onto the URL for an object to be served was ignored, and the jury was improperly told that the "tagging" step was satisfied through the use of a "CDN virtual hostname," which is not found anywhere in the patent or this Court's claim construction.

- The jury was told incorrectly that "as a function of" means "it depends on or it is related to," and testimony on "current Internet traffic conditions" was unfairly presented without proper Court construction of these claim terms.

- The jury was told that the "optimal" requirement was met by a "good" server, eviscerating the meaning of this stipulated term as construed by this Court.

As a result, the jury was forced to engage in its own claim construction, or to weigh the different constructions presented by the parties, in contravention of the Supreme Court's <u>Markman</u> decision.  This caused the jury to be irreconcilably confused about what the patent and the asserted claims required.

**Second**, a new trial is necessary because improper expert testimony was presented through Dr. Leighton, in direct violation of the Discovery Master's Order (as affirmed by this Court), that the "tagging" limitation is satisfied by replacing the original hostname with a "CDN virtual hostname" and not retaining the original URL, an assertion not supported by the patent and inconsistent with this Court's claim construction.

**Third,** a new trial is necessary because infringement was found by the jury based, in part, on the term "close" — which does not appear in any of the asserted claims and had no definite meaning for the jury to apply.

**Fourth**, a new trial is necessary because certain jury instructions were improper and unfairly prejudiced Limelight on key substantive issues.

**Fifth**, a new trial is necessary because, despite an effort by the jury (as reflected in its questions during deliberations) to understand the operation of the Limelight system, which was described during trial by reference to the prior art, Akamai was successful in urging the Court to prevent the jury from considering the prior art to aid its understanding of how Limelight's system works.

**Sixth**, a new trial is necessary (if judgment is not entered in Limelight's favor) because the verdict is against the weight of the evidence as demonstrated by Limelight's Motion for Judgment as a Matter of Law and Motion for Judgment of Obviousness.

Each one of these reasons alone is sufficient to merit a new trial to prevent a miscarriage of justice.

## II.   LEGAL STANDARD

A new trial may be granted if:

- the verdict is against the weight of the evidence; or

- for other reasons, the trial was not fair and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004) (citations omitted, granting conditional new trial); Fed. R. Civ. P. 59(a) and 50(b).[1]

---

[1]   See also, Payton v. Abbott Labs, 780 F.2d 147, 152-153 (1st Cir. 1985) (affirming decision to grant new trial regarding "confusion surrounding the admission of certain evidence"); Phav v. Trueblood, Inc., 915 F.2d 764, 766 (1st Cir. 1990) (affirming decision to grant new trial, stating "[a] verdict may be set aside and new trial ordered 'when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice.'")

A new trial is especially appropriate to cure prejudicial argument.  See Warner v. Rossignol, 538 F.2d 910, 911-12 (1st Cir. 1976) (granting new trial due to counsel's statements which could not be cured by instruction); Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 206-207 (3rd Cir. 1992) (granting new trial due to "improper and inflammatory remarks" by counsel).  For example, a new trial is warranted where — as here — a prior court order is disregarded, and a party proffers arguments "incorrectly expanding the grounds for liability at trial to include grounds ruled out by the court."  Christopher v. Florida, 449 F.3d 1360, 1367 (11th Cir. 2006) (affirming new trial where counsel's arguments went beyond court order); see also Lucent Tech., Inc. v. Extreme Networks, Inc., 229 F.R.D. 459, 462-463 (D. Del. 2005) (granting new trial in patent case where counsel failed to adhere to evidentiary rulings in bifurcated trial).

Under Rule 50 or 59, a court may "order a new trial upon the motion of a party or *sua sponte* where there is insufficient evidence to support the verdict or where the verdict was against the weight of the evidence."  Greenleaf v. Garlock, Inc., 174 F.3d 352, 365 (3rd Cir. 1999).  Unlike judgment as a matter of law, in deciding to grant a new trial, this Court may consider the credibility of the witnesses and the weight of the evidence presented.  See Scimed Life Sys., Inc. v. Johnson & Johnson, 225 F. Supp. 2d 422, 433 (D. Del. 2002), affirmed, 87 F.App'x 729 (Fed. Cir. 2004).  As a result, "[a] new trial may be granted even when judgment [as a matter of law] is inappropriate."  Brennan v. Norton, 350 F.3d 399, 430 (3rd Cir. 2003); see also Manley v. Ambase Corp., 337 F.3d 237, 244-45 (2nd Cir. 2003) (same).

## III.   DISCUSSION

### A.   A New Trial is Necessary Because This Court's Claim Construction Order Was Disregarded, Certain Terms Were Not Construed, and the Construction of "Optimal" Was Prejudicially Confusing.

Claim construction is a question of law, and only the Court construes disputed claim terms.  See Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996); U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.").

Claim construction is not simply an option; it is a requirement for a fair trial.  The Federal Circuit has emphasized that "the district court must instruct the jury on the meanings to be attributed to **all disputed terms** used in the claims in suit . . . ."  Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1366 (Fed. Cir. 2004) (emphasis added).  A jury "cannot be left free to apply its own reading of disputed terms to the facts of the case."  Id.  It is an error of law to allow counsel to argue the meaning of claims, or to allow the jury to determine the meaning of claims. Id.; see also U.S. Surgical Corp., 103 F.3d at 1568.

### 1.   A New Trial is Necessary Because of Inappropriate Argument and Jury Instructions Regarding the Claim Construction for the "Tagging" Step.

Akamai argued to the jury that Limelight is liable for "tagging [ . . . ] the embedded objects of the page" by causing an alphanumeric string comprising a Limelight hostname — what Akamai has dubbed a "virtual CDN hostname" — to be substituted for the original hostname in the URL for the object, either directly or via CNAMEing.  This argument is directly at odds with the Court's claim construction.  In response to Akamai's assertion, Limelight proffered curative jury instructions to correct the jury's impression of this critical claim construction, which were not incorporated into the final charge.  A new trial is necessary because

4

Akamai's arguments misleadingly and incorrectly expanded the scope of the asserted claims, and because the jury was incorrectly instructed.

>    **(A)    A New Trial is Necessary Because Akamai's "Tagging" Theories Were Improper and Unfairly Prejudicial to Limelight.**

During the trial Akamai presented an infringement theory that was (1) directly contrary to this Court's claim construction, which requires "tagging" to include "the URL used to identify the object in the absence of a content delivery network"; and (2) contrary to the Discovery Master's Order (which this Court affirmed) preventing Dr. Leighton from giving improper testimony about modified URLs not discussed in the patent.  Limelight's Memorandum in Support of Its Motions for Judgment as a Matter of Law ("JMOL"), Sections II.A.1 & II.A.2, describe in detail the Court's previous construction and the evidence presented by Akamai.  In the interest of not burdening this Court with duplicate argument, Limelight does not repeat those sections here, but incorporates them by reference and provides a short summary.

The Court previously evaluated the specification of the patent (sharing a common specification with the other patents-in-suit) and determined that it describes "the invention" as associating an object with an alphanumeric string consisting of "a virtual server hostname prepended onto the URL for the object" and that "the specification discloses no other way that an object is associated with an alphanumeric string … which did not include the URL for the embedded object …"  (See Docket # 92, Order Regarding Claim Construction ("Claim Construction Order") at 5-6; JMOL, Section II.A.2.)

Akamai elicited testimony from Dr. Leighton regarding the term "CDN virtual hostname" and defining the term in a way not described in the patent — replacing the old hostname with a CDN virtual hostname and not retaining the original URL — which violated the Court's Claim Construction Order and ruling that Dr. Leighton is "not entitled to [describe the invention] in a

way that is not in the patent." (Trial Tr., 51:4-6, February 12, 2008, Session 2; see JMOL,

Section II.A.1.)[2] Akamai also continued its assertion that Limelight infringes the claims through

the testimony of its expert, Dr. Crovella, based on a "CDN virtual hostname" not disclosed in the

patent. (JMOL, Section II.A.5.)

Presentation of evidence and argument inconsistent with this Court's prior claim

construction in this case necessitates a new trial. Akamai's "tagging" arguments were erroneous,

prejudicial, and misleading to the jury. As explained supra, the failure to abide by this Court's

Claim Construction Order unfairly influenced and prejudiced the jury against Limelight. A new

trial is thus warranted. See Lucent, 229 F.R.D. at 462-463; Cytologix Corp. v. Ventana Med.

Sys., Inc., 424 F.3d 1168, 1172 (Fed. Cir. 2005) (stating that "[t]he risk of confusing the jury is

high when experts opine on claim construction before the jury even when …. the district court

makes it clear to the jury that the district court's claim constructions control.")

In addition, Akamai's use of the term "CDN virtual hostname" during the trial was

inconsistent and misleading. Dr. Leighton testified that a "virtual CDN hostname" is a hostname

such as "a123.akamai.net." (Trial Tr., 51:20 - 54:2, 64:1, 77:23-24, February 12, 2008, Session

2.) Dr. Crovella testified that the CDN virtual hostname is a hostname and that the "tag" is the

CDN virtual hostname. (Trial Tr., 123:22-25, February 13, 2008; Trial Tr., 130:24 - 131:3,

February 14, 2008 (CDN virtual hostname is a hostname); Trial Tr., 59:19-22, February 14, 2008

(a "tag" is the CDN virtual hostname).) But Akamai also argued that "the tag is a URL that

contains one of these virtual hostnames or a URL that resolves to the content delivery network

---

[2]  Attached is a Transcript Appendix, which is a chronological compilation of all transcript pages cited in this Memorandum. We understand that for certain trial days the pagination of the transcripts delivered electronically by the reporters differs from the later hard copy pagination. All citations to and copies of the trial transcript in this Memorandum are to the electronic transcripts.

servers." (Trial Tr., 57:4-6, February 14, 2008.)  Akamai's invalidity expert, Dr. Jeffay, testified

that the prior art did not disclose "CDN virtual hostnames," but just "vanilla hostnames." (Trial

Tr., 36:17-25, 67:4-8, February 27, 2008.)  Dr. Jeffay further criticized the prior art hostnames

because "there's no encoded information" or "processing of that information by the DNS."

(Trial Tr., 36:17-25, February 27, 2008.)  Dr. Jeffay further testified that Claim 1 of the '703

Patent (invalid due to the prior art) did not disclose a "CDN virtual hostname," but just a

"hostname." (Trial Tr., 77:3-5, February 27, 2008.)  And in closing argument, Akamai's counsel

argued that a CDN virtual hostname is "simply shorthand for what the Judge has defined as an

optimal server …." (Trial Tr., 83:5-11, February 28, 2008, Session 1.)

     In sum, the theories of infringement presented at trial "were legally and factually

untenable in light of the court's claim construction" and were intended to "artfully avoid[] the

limitations of the patent claims and create[] an illusion of infringement." <u>Medtronic Navigation,</u>

<u>Inc. v. BrainLAB Medizinische Computersystems Gmbh</u>, No. 98-cv-01072-RPM, 2008 WL

410413, at *6, 10 (D. Colo. Feb. 12, 2008).  The failure to follow the Court's Claim Construction

Order by itself requires a new trial. <u>See</u> <u>Christopher</u>, 449 F.3d at 1367 (ordering new trial when

plaintiff did not limit liability theories per court order).  A jury verdict cannot stand when

counsel "incorrectly expand[s] the grounds for liability at trial to include grounds ruled out by

the court." <u>Id.</u>  It would constitute a "miscarriage of justice" to let the jury verdict stand when

Akamai's theories stretched legal bases for infringement beyond recognition. <u>See</u> <u>Payton</u>, 780

F.2d at 152-153 (affirming decision to grant new trial over "confusion surrounding the admission

of certain evidence").  If the Court declines to grant JMOL, as requested in Limelight's JMOL, at

a minimum, a new trial is appropriate and necessary.

**(B)** **A New Trial is Necessary Because Limelight's Proposed "Tagging" Jury Instructions Were Prejudicially Omitted.**

In an attempt to correct the actions referenced above, Limelight proposed jury instructions consistent with the Court's Claim Construction Order.  (See Docket # 264 at 5.) Limelight also filed supplemental jury instructions explaining how its "jury instruction appropriately incorporates the Court's holdings about 'the invention'" and is consistent with the file wrapper history.  (See Docket # 272.)  Limelight specifically raised the importance of these instructions at the charge conference.  (See Charge Conference Tr., 50:12 - 62:13, February 26, 2008.)  Akamai filed alternate instructions, contending that the Claim Construction Order did not apply to the claims at issue.  (See Docket # 275, Docket # 284 at Ex. C)  As discussed in Limelight's Memorandum in Support of its Motions for Judgment as a Matter of Law, Akamai's arguments were inapposite and contrary to Federal Circuit authority.  (See JMOL, Section II.A.3.)

After objections and argument from Akamai, the Court declined to issue Limelight's proposed instructions, briefly telling the jury instead "one question for you is whether either method does use tagging.  If it doesn't, then it doesn't infringe the claims that require tagging.  If it does, then go on to the rest of it."  (Trial Tr., 20:1-4, February 28, 2008, Session 2.)  This instruction was insufficient and prejudicial, and downplayed the importance of the claim construction for the disputed term.

The instruction was also incapable of correcting the misleading impression that "tagging" can be achieved simply by replacing the hostname in the original URL with the made-up concept of a "CDN virtual hostname."  It did not inform the jury of the proper construction set forth in this Court's Claim Construction Order.  That Limelight was allowed to argue the Court's Claim Construction Order to the jury (See Trial Tr., 20:3 - 25:18, February 28, 2008, Session 1) did not

8

cure the prejudice of not having the Court instruct the jury on the meaning of the asserted claims. If anything, the prejudice was exacerbated because the jury was told that attorney argument was not evidence on which it could rely.  The jury was thus left with the dilemma of determining which meaning of the claims was correct.  Indeed, in closing argument Akamai's counsel informed the jury that it would be "legal error" for the jury to limit the claims to a URL form that keeps the "original URL."  (Trial Tr., 50:13 - 51:7, February 28, 2008, Session 1.)  Of course, the jury should not be in the position to make any legal determinations — as suggested by Akamai's counsel.

It "is the **duty of trial courts** in patent cases in which claim construction rulings on disputed claim terms are made prior to trial and followed by the parties during the course of the trial **to inform jurors both of the court's claim construction rulings on all disputed claim terms** and of the jury's obligation to adopt and apply the court's determined meanings of disputed claim terms to the jury's deliberations of the facts."  Sulzer, 358 F.3d at 1366-67 (emphasis added, finding court erred but it was harmless).  At a minimum, a new trial is appropriate because Limelight's instructions, incorporating the appropriate claim construction, were not included in what was presented to the jury by the Court.  See Seachange Int'l., Inc. v. C-COR, Inc., 413 F.3d 1361, 1381-382 (Fed. Cir. 2005) (finding erroneous and prejudicial claim construction instruction affecting jury's interpretation for anticipation was grounds for a new trial); see also Levin v. Dalva Bros, Inc., 459 F.3d 68, 77-78 (1st Cir. 2006); Cerqueira v. Am.

Airlines, Inc., No. 07-1824, 2008 WL 104105, at *11-13 (1st Cir. Jan. 10, 2008) (finding failure to give jury instruction was reversible error).[3]

> ### 2.    A New Trial is Necessary Because of a Failure to Construe the "As A Function Of" and "Current Internet Traffic Conditions" Limitations.

Because the terms "as a function of" and "current internet traffic conditions" were not construed, the jury was improperly "free to make its own determination of the meaning of the claims." Sulzer, 358 F.3d at 1367.  Both Akamai and Limelight requested that "as a function of" be construed for the jury.  (See Docket # 267 at 18 (Akamai proposed instruction) and Docket # 272 (Limelight proposed instruction).)  Limelight additionally requested that the Court construe and instruct the jury regarding "current internet traffic conditions."  (Id.)  The Court did not construe either term.

During the trial, the jury was presented with conflicting meanings of the two terms.  (See Trial Tr., 96:13 - 98:10, February 14, 2008 ("Internet traffic conditions"); Trial Tr., 94:20 - 96:6, 125:14-23, February 14, 2008 ("as a function of"); Trial Tr., 102:15 - 103:17, February 15, 2008 ("as a function of"); Trial Tr., 60:3-21, 82:4 - 86:7, February 22, 2008 (both terms); Trial Tr., 18:14-22, February 26, 2008, Session 1 ("Internet traffic conditions").)  **Even Akamai recognized, and objected,** that such testimony was "a question as to what a claim term means. It's an issue of claim construction."  (Trial Tr., 82:13-14, February 22, 2008.)

---

3    Limelight additionally filed proposed instructions to inform the jury that the Patent and Trademark Office ("PTO") required that the title of the '703 patent be amended to "Global Hosting System for Redirecting Request for Embedded Object by Prepending Host Name to URL Referencing the Object Prior to Serving a Web Page." (Docket # 264 at 11.)  This instruction was legally correct under the Manual of Patent Examining Procedure ("MPEP") § 606.01.  This instruction would have been substantially helpful to the jury to understand the invention claimed by the patent.  Especially when Akamai's counsel made unfounded allegations that the patent was a "rare" "invention that changes the basic … way that things were done" over the Internet, it was important to instruct the jury that the title approved by the PTO did not reflect such a broad invention.  (Trial Tr., 17:14-23, February 11, 2008.)

Akamai nevertheless presented evidence through Dr. Crovella, who testified that "as a function of" could mean merely "it depends on or it's related to," and that use of Anycast took into account "current Internet traffic conditions."  (See Trial Tr., 96:10 - 98:10, February 14, 2008 ("Internet traffic conditions"); Trial Tr., 94:20 - 96:6 ("as a function of"), 125:14-23, February 14, 2008.)  Even though the claims are to be construed in accordance with their plain meaning, this "does not change the fact that the meaning of the claim terms was not apparent [and] was disputed by the parties."  Sulzer, 358 F.3d at 1367; see also Markman, 517 U.S. at 372.  There was a dispute between the parties as to the plain and ordinary meaning, and allowing the jury to decide the claim construction for these terms merits a new trial.  Accordingly, to the extent this Court does not grant judgment of non-infringement as a matter of law, the Court should construe the terms "as a function of" and "current Internet traffic conditions" and order a new trial on infringement.

### 3.      A New Trial is Necessary Because Akamai's Arguments and the Construction of "Optimal" Were Prejudicially Confusing.

On April 24, 2007, the parties stipulated that "[t]he term 'to resolve to a domain other than the content provider domain' in Claims 17, 19, and 34 of the '703 Patent means 'to specify a particular group of computers that does not include the content provider from which an optimal server is to be selected.'"  (Docket # 74.)  Prior to trial, both parties submitted letters asking the Court **not** to reconstrue the meaning of "optimal" in this claim construction.  As Limelight emphasized in its letter:

> **We agree with Mr. Frank that no further claim construction is required**. Rather, **the parties stipulated to the term "optimal," based on this Court's construction in the prior case, and neither should be allowed to now change that construction.**

> Instead, at the pretrial conference on February 5, 2008, **Limelight merely asked the Court to resolve the legal question of whether judicial estoppel bars Akamai from trying to now change the position it took in the Digital Island**

**case[4]** to obtain vacatur from this Court of the jury's invalidity verdict. This is a critical, albeit straight forward, legal question because it controls what the parties may present to the jury about what the Court has already ordered.

As we stated during the pretrial conference, judicial estoppel should apply here because Akamai has unequivocally and successfully argued that the relevant '703 Patent claims require selection of an "optimal" or "best" server.

(Docket # 237 (emphasis added).)  In its separate letter, Akamai consistently advised the Court

that Akamai also did not want the stipulation to be further construed on the eve of trial, stating:

In the circumstances, **Akamai respectfully suggests that, at this stage of the case, further claim construction is both unnecessary and unwise. Neither side has contended that the selection criteria that are expressly stated in these claims are unclear or require further definition.  The existing claim constructions will suffice.**  The parties have submitted expert reports and prepared for trial on the reasonable assumption that the existing claim constructions define the issues in this case.  The case should continue on that basis.

(Docket # 236 (emphasis added).)

Nevertheless, on February 8, 2008 — three days before trial — the Court issued an

"Order Construing Stipulated Term" that improperly construed "optimal" very differently from

the parties' stipulation.  (Docket # 246.)  The claim construction itself is two pages long and

notes that "the dictionary meaning of the word "optimal" means "[m]ost favorable or desirable;

optimum" and "[b]est; most likely to bring success or advantage;" but nevertheless concludes:

"[W]hile ultimately the object is served from only a single content server, nothing in the

specification or the claims limits 'an optimal server' to only a single best server … [T]hus, the

word 'optimal' in the stipulated substitution is limiting in that it requires the selection of a

---

4    In the previous Digital Island trial Akamai argued that the selection of an optimal server required the selection of a "best" server.  (Id., see also Docket # 113 at 2, 19, and 21.)  Limelight contends that Akamai was judicially estopped from now arguing that "optimal" meant "close to the end-user relative to other content servers in the Limelight network, capable of serving and likely to already have the content, and not overloaded."  (Id. at 19.)  The Court found that Akamai was not judicially estopped because Akamai's "optimal" interpretation was not the basis for the grant of judgment as a matter of law in Digital Island.  (Docket # 246 at 2.)

content server that is better than other possible choices in terms of the criteria established by the specification."  (Id.)

Without a concise and workable definition in the February 8, 2008 Order, Akamai and its witnesses were able to argue at trial that the selection of "good" servers met the optimal limitation of the stipulation.  (See JMOL, Section II.C.6 (entitled "Good Servers Are Not Optimal Servers").)  Akamai's expert and fact witnesses systematically and repetitively told the jury that Limelight's method infringed the '703 Patent because it selected "good" servers:

Leighton, Trial Tr., February 12, 2008 (Session 2) (emphasis added)

| | |
|---|---|
| 57:3: | "… servers that are going to be **good** for you …" |
| 58:4: | "… our computers that are **good** for you …" |
| 58:19 | "… the goal is to send you the **good** servers …" |

Crovella, Trial Tr., February 13, 2008 (emphasis added)

| | |
|---|---|
| 117:2-3 | "… to choose servers that at that location and at that time are **good** servers …" |
| 117:19 | "… that are **good** servers, serving this content to this user …" |
| 121:24-25 | "… what servers are **good** servers for serving this content." |
| 123:8 | "… servers that are **good** servers for delivering content …" |
| 125:23-25 | "… it's that translation that gets you to a **good** server, one that's a **good** server for serving the content to you …" |
| 133:4-5 | "… intelligent DNS knows which content servers are **good** ones …" |

Crovella, Trial Tr., February 14, 2008 (emphasis added)

| | |
|---|---|
| 7:22-23 | "… the intelligent DNS knows which servers are **good** servers …" |
| 43:20-21 | "… servers that are **good** servers for serving this particular content …" |
| 61:2-3 | "…intelligent DNS has collected servers that are **good** servers for serving°…" |
| 61:13-17 | "why are they **good** servers"; "These are **good** servers because they're close to the end user, they're likely to hold the content, and they're not overloaded…" |
| 68:8-9 | "… we can select servers that are **good** servers for serving the content…" |
| 75:2 | "… servers that are **good** servers for users …" |

<u>Crovella</u>, Trial Tr., February 15, 2008 (emphasis added)

100:12-14      "that's the strength of the patented method, is that it's teaching specific criteria to use to choose a **good** server …"

Under any reasonable definition, "good" does not mean "optimal" as interpreted by this Court.  Indeed, the word "good" does not even appear in the Court's February 8, 2008 Order.  Yet, Akamai repeatedly argued to the jury that "good" servers met the requirements of the claim because of the nature of the last minute claim construction despite requests from all parties' that there be no further claim construction of "optimal."

Thus, in the event that the Court does not grant JMOL because no substantial evidence was presented at trial that the "optimal" limitation is met by actions during the resolving step, a new trial is appropriate because the last-minute construction of a stipulation (not requested by either party), and Akamai's arguments, effectively eviscerated this claim limitation.  See <u>Payton</u>, 780 F.2d at 152-153 (error of law is grounds for new trial); <u>Seachange</u>, 413 F.3d at 1381-382 (granting new trial due to claim construction instructions).

### B.     Akamai's Use of Dr. Leighton to Provide Expert Testimony Directly Violated the Discovery Master's and This Court's Orders and Necessitates a New Trial.

On December 18, 2007, the Discovery Master ruled that Dr. Leighton could not give expert testimony unless Akamai complied with Fed. R. Civ. P. 26(a)(2).  (<u>See</u> Docket # 111 and Order By Special Discovery Master dated December 18, 2007 ("Discovery Master's Order").)  There is no dispute that Akamai did not provide the disclosures required by Rule 26(a)(2).  The Discovery Master's Order specifically addressed Dr. Leighton's opinion about a URL (after modification by the Akamai system) that Dr. Leighton contended was an embodiment of "tagging" as claimed in the patents.  (<u>Id.</u> at 4.)  The Discovery Master ruled that it was <u>not</u> fact

14

testimony for Dr. Leighton to testify that http://a05678.akamaitech.net/banner.gif was a modified URL under the patent.  (See Id. at 4, ¶ 2.)

This Court upheld the Discovery Master's Order, and ruled that Dr. Leighton could give fact testimony only.  (See February 8, 2008 Electronic Endorsement re Docket # 119, and Trial Tr., 5:11-19, February 12, 2008, Session 2.)  Nevertheless, despite the Discovery Master's Order and this Court's overruling of Akamai's objection to the Order, Akamai elicited testimony from Dr. Leighton over Limelight's objections that did precisely what the Discovery Master and this Court held was precluded.  (See JMOL, Section II.A.4 for a more complete description of this error.)

It was improper for Dr. Leighton to testify as he did, contrary to numerous rulings and orders precluding such testimony.  The incorrect assertion that the example was in the patent could cause the jury to be confused into thinking that such a method necessarily infringed the patent.  (See Trial Tr., 52:6-13, February 12, 2008, Session 2.)  This unfairly prejudiced Limelight on a key issue and constituted a miscarriage of justice.  See Payton, 780 F.2d at 152-153 (affirming decision to grant new trial over "confusion surrounding the admission of certain evidence"); Phav, 915 F.2d at 766 (miscarriage of justice is grounds for a new trial).  A new trial is warranted based on this misconduct.

## C.    A New Trial is Necessary Because "Close" as Argued by Akamai is Indefinite.

As presented to the jury under Akamai's theory of infringement, the asserted claims of the '703 Patent required a determination whether resolution by Limelight name servers selects content servers that are, *inter alia*, "close" to the end user.  The weight of the evidence, however, demonstrated that "close" is an indefinite term which does not allow one of ordinary skill (much less a jury) to determine whether that requirement is met.  (See Trial Tr., 37:8 - 40:10, February

15

25, 2008.)  Lack of definiteness — which prevents the public from knowing what is and what is not covered by the claims — causes claims to be invalid as a matter of law.  <u>See</u> <u>Union Pac. Res. Co. v. Chesapeake Energy Corp.</u>, 236 F.3d 684, 692 (Fed. Cir. 2001); <u>Halliburton Energy Servs., Inc. v. M-I LLC</u>, 514 F.3d 1244, 1249 (Fed. Cir. 2008); <u>Datamize, LLC v. Plumtree Software, Inc.</u>, 417 F.3d 1342, 1351 (Fed. Cir. 2005).

During the trial, Akamai, while asserting that the meaning of close was a legal issue and its indefiniteness should not be presented to the jury (Trial Tr., 35:24 - 36:4, February 25, 2008) nevertheless sought to avoid the indefiniteness of "close" by arguing that "closest" could be used as a proxy for "close."  (<u>See</u>, <u>e.g.</u>, Trial Tr., 85:14-18, 64:14-18, February 28, 2008, Session 1; Trial Tr., 92:2-23, February 14, 2008; Trial Tr. 39:5 - 40:10, February 25, 2008.)  This only added to the confusion and unfairness.  As the evidence showed, "closest" and "close" are not synonymous.  (<u>See</u> Trial Tr., 37:8 - 40:10, February 25, 2008.)  Indeed, even the Court  observed one can be closest but still not be close.  (<u>See</u> Trial Tr., 38:5-7, February 22, 2008.)  In the context of the Limelight system and its use of Anycast, a user may be routed to the "closest" Limelight server in network terms, but still not be "close" — as was shown during the trial in the delivery to the courtroom of content appearing on a CNN website from a content server in San Jose, CA.  (<u>See</u> Trial Tr., 80:21 - 82:16, February 15, 2008.)  This Court can take judicial notice of the fact that a Limelight server in San Jose, CA is not "close" to Boston.  In short, "closest" and "close" are two different concepts, and one does not mean the same as the other.

Presenting the jury with an indefinite term without any guidance resulted in a manifest miscarriage of justice, necessitating a new trial.[5]  <u>See</u>, <u>e.g.</u> <u>Payton</u>, 780 F.2d at 152-153

---

[5]  Even if the jury somehow applied their own, alternative definition of "close," a new trial is still warranted because the jury would again be improperly performing claim construction.

(miscarriage of justice requires new trial); <u>Warner</u>, 538 F.2d at 911 (statements by counsel require new trial); <u>Seachange</u>, 413 F.3d at 1381-382 (erroneous and prejudicial instructions require new trial).

> **D.      A New Trial is Necessary Because Certain Jury Instructions Were Improper and Had a Prejudicial Effect.**

In a patent case, a "jury verdict will be set aside, based on erroneous jury instructions, if the party seeking to set aside the verdict can establish that those instructions were legally erroneous, and that the errors had prejudicial effect."  <u>NTP, Inc. v. Research In Motion, Ltd.</u>, 418 F.3d 1282, 1311-1312 (Fed. Cir. 2005) (remanding to determine prejudice).  "An erroneous instruction on claim interpretation that affects the jury's decision . . . is grounds for a new trial." <u>Seachange</u>, 413 F.3d at 1381-382 (finding erroneous and prejudicial claim construction instruction affecting jury's interpretation for anticipation was grounds for a new trial); <u>see also</u> <u>Levin</u>, 459 F.3d at 77-78 (granting new trial when the error "prejudiced the objecting party").

In addition to the instructions on claim construction that were not given, as noted <u>supra</u>, Limelight respectfully requests a new trial based on the following jury instruction errors.

> **1.      The Divided Infringement Instructions Prejudiced Limelight on Each Claim Asserted.**

Limelight's proposed instructions concerning the issue of joint infringement — as specifically detailed in <u>BMC Resources, Inc. v. Paymentech, L.P.</u>, 498 F.3d 1373 (Fed. Cir. 2007) — were not given to the jury, thus warranting a new trial.  Limelight contends that both the "tagging" step and the "serving the page" step of Claims 19 and 34 are performed by third parties.  (<u>See</u> Docket # 280 at 4.)  Limelight filed a memorandum of law in support of its proposed jury instruction, pointing out that Akamai's instruction was limited to the "tagging" step and overlooked the contention that Limelight "does not direct or control the use of Internet

routing performed by non-customer third-party networks — which are the networks that make up the Internet and are operated by other third party companies." (Id.)

In its charge to the jury, however, the Court limited its divided infringement instructions to the "tagging" step and told the jury that Limelight must "direct and control" the "substitution" of the "original **content provider hostname . . .** with a Limelight network hostname" (the "Prepend method") or by "modif[ying the] DNS system so that the object is retrieved from Limelight's content delivery network **by means of an alias of the hostname**" (the "CNAME method"). (Trial Tr., 20:5 - 21:12, February 28, 2008, Session 2 (emphasis added).) The Court stated that the question was "does Limelight direct and control the modifications or does **the content provider** carry out these tasks **entirely independently**." (Id. at 21:22-25 (emphasis added).)

This instruction is erroneous and prejudicial for two reasons. **First,** the Court instructed the jury that only the "tagging" step could be considered for the purposes of determining divided infringement, entirely ignoring the "serving the page" step. **Second,** BMC does not require that a third party be "entirely independent." To the contrary, in BMC, the Federal Circuit affirmed non-infringement when the defendant had a contractual relationship with its customers and financial institutions which performed steps that completed a method. See BMC, 498 F.3d at 1381-82; see also BMC Resources, Inc. v. Paymentech, L.P., No. 3:03-cv-1028-M, 2006 WL 1450480, at *5 (N.D. Tex. May 24, 2006). The proper standard is whether the defendant exercised "direction or control" over the third parties.

In a sidebar after the initial instructions, Limelight's counsel pointed out that the correct standard under BMC is "direction **or** control" and requested that when correcting the instructions to the jury, "when you do that, you did mention with respect to the tagging step, but it also

relates to the serving the page step." (Trial Tr., 42:11-14, February 28, 2008, Session 2 (emphasis added); see also id. at 52:1-3 ("It's not limited to prepend or CNAME.  It's also serving of the page step.").)  Akamai's counsel agreed. (Id., 52:4-5.)  The Court partially corrected its instruction, stating:

> One of those is that I had told you with  respect to activities that Limelight says were really done by **somebody else, namely the content provider**, that  such activities are chargeable to Limelight if Limelight directed and controlled **this content provider** in the  example we're using. I was wrong on that. It is either direct or control, control or direct; it doesn't have to be both.

(Id. at 52:23 - 53:5 (emphasis added).)

This "correction," however, only amplifies the focus on the "tagging" step and does not correct the omission of the "serving the page" step, which is necessary for Claims 19, 20, and 21. It also failed to dispel the notion that a party needs to be "entirely independent" for Limelight to avoid infringement.  These errors unfairly prejudiced Limelight and would have been avoided by Limelight's proposed instruction, which Limelight submitted twice.  (See Docket # 264, Docket # 280.)  Because there is a strong probability that the jury's decision was affected by these instructions, a new trial is warranted.  See Seachange, 413 F.3d at 1381-1382; see also Levin, 459 F.3d at 77-78.

## 2.    The Obviousness Instruction Did Not Comply With KSR.

The Court rejected Limelight's proposed instruction on obviousness, and instead provided the jury with a truncated instruction that omitted new and important instructions on obviousness required by the Supreme Court's decision in KSR Int'l Co. v. Teleflex Inc., 550 U.S. ___, 127 S.Ct. 1727 (2007).  For example, at the charge conference, Limelight's counsel noted that "the Supreme Court has now put back into the lexicon that [which] used to be verboten, which is obvious to try.  If it's obvious to try to do something a certain way, then that could render it obvious." (Compare, e.g., Charge Conference Tr., 49:9-14, February 26, 2008,

with KSR, 127 S.Ct at 1732 ("the court erred in concluding that a patent claim cannot be proved obvious merely by showing that the combination of elements was obvious to try.").)  Limelight's proposed instructions included the following statements taken directly from the Supreme Court's decision:

- "[w]hen a 'patent simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is likely to be obvious." KSR, 127 S.Ct. at 1740; compare with Docket # 264 at 30 (same);

- "It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle." KSR, 127, S.Ct. at 1732; compare with Docket # 264 at 30 (same); and

- "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." KSR, 127 S.Ct. at 1742; compare with Docket # 264 at 30 (same).

Limelight urged the Court to "make sure that these new concepts from the Supreme Court decision are included among those that your Honor mentions."  (Charge Conference Tr., 49:17-19, February 26, 2008.)  The Court's failure to include in the instructions these concepts from KSR that are integral to determination of obviousness should be corrected.  See Cerqueira, 2008 WL 104105 at *11.

Judgment of obviousness of the asserted claims is appropriate for the reasons stated in Limelight's Memorandum in Support of its Motion For Judgment of Obviousness.  At a minimum, however, if the Court decides to accept the jury's advisory opinion on the question of obviousness, then a new trial is appropriate due to the omission of integral, detailed instructions in a complicated area of law.

### 3.     Other Key Instructions Were Omitted, Substantially Prejudicing Limelight.

Omitted instructions constitute reversible error if the "omitted instructions were (1) correct as a matter of substantive law, (2) not substantially covered in the charge as a whole, and (3) integral to an important point in the case." Cerqueira, 2008 WL 104105 at *11 (finding failure to give jury instruction was reversible error). Critical instructions proposed by Limelight were omitted and not otherwise covered in the Charge as a whole. Because these instructions were integral to the issues of the case, their omission severely prejudiced Limelight.

**Ordering.**  Limelight (and Akamai) proposed instructions explaining the legally correct statement that method claims must be performed in sequence if the patent requires ordering. See, e.g., Interactive Gift Exp., Inc. v. Compuserve Inc., 256 F.3d 1323, 1342-43 (Fed. Cir. 2001) (outlining test); Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1369-70 (Fed. Cir. 2003) (elaborating upon requirements); Loral Fairchild Corp. v. Sony Corp., 181 F.3d 1313, 1321-22 (Fed. Cir. 1999) (finding implicit order required); Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc., 152 F.3d 1368, 1375-76 (Fed. Cir. 1998) (same).

Limelight's proposed instruction was legally correct under Federal Circuit authority:

> The sequence in which the separate "steps" recited for performing a method may be a requirement of the claim.  The steps can explicitly or implicitly require that they be performed in the order written. To determine if a claim requires that its steps be performed in a specific order, you should examine two issues. First, you must look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written. If not, you next look to the rest of the specification to determine whether it directly or implicitly requires such a construction. If not, the sequence in which such steps are written is not a requirement.  (See Docket # 264 at 17.)

Each of the asserted claims of the '703 Patent are method claims.  The specification requires that the claims be performed in a specific order.  See, e.g., '703 Patent, col.6 ll.46-52 ("the routine begins…"); col.7 ll.49-58 ("Step 1…"); col.9 ll.20-25 ("Step 2…"); col.9 ll.31-39

("Step 3…"); col.10 ll.54-57 ("Step 4…"); col.12 ll.26-28 ("Step 5…"); col.14 ll.44-49 (implying replication must occur before tagging step in Claim 19). Failure to perform ordered steps in a correct sequence is a complete defense to infringement. Omitting Limelight's proposed instructions was substantially prejudicial. See Loral, 181 F.3d at 1321-22; Mantech, 152 F.3d at 1375-76.

**Lost Profits - "But For" Test and Collateral Sales.** The Court also declined to issue two instructions regarding lost profits which were correct, not substantially covered, and integral to Limelight's lost profits defense:

> If Akamai fails to prove each of these factors, you should not find lost profits. Even if these factors are met, you may decline to award lost profits if the evidence does not support an inference that lost profits are appropriate. If you find that Akamai's claim for lost profits damages is speculative, you should not award lost profits against Limelight. (See Docket # 264 at 42); and

> Furthermore, Akamai cannot recover for profits from allegedly lost sales of products that may have been sold with an infringing device only as a matter of convenience or on the basis of a business advantage created by the sale of the Akamai CDN product. If you find that Akamai has proven these facts, then the profit that Akamai would have made from those collateral sales should be part of any damages awarded to Akamai. Damages for lost profits on lost collateral sales, if any, are calculated in the same manner as I just described for calculating lost profits on the Akamai CDN product. (See Docket # 264 at 49.)

Failure to include these instructions substantially prejudiced Limelight. First, it is well established that lost profits damages cannot be based upon speculation or "unsupported presumption." See Oiness v. Walgreen Co., 88 F.3d 1025, 1029 (Fed. Cir. 1996) (reversing award); Shockley v. Arcan, Inc., 248 F.3d 1349, 1363 (Fed. Cir. 2001) (rejecting lost profits award). The jury should have been so instructed.

Second, failure to properly instruct the jury as to the "functional relationship" test to determine collateral sales was prejudicial to Limelight. Collateral sales damages cannot be awarded to "include items that have essentially no functional relationship to the patented

invention and that may have been sold with an infringing device only as a matter of convenience or business advantage," which is precisely the proposed language in Limelight's instruction. <u>Am. Seating Co. v. USSC Group, Inc.</u>, 514 F.3d 1262, 1268 (Fed. Cir. 2008), <u>quoting</u> <u>Rite-Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1549-1551 (Fed. Cir. 1995); <u>see</u> <u>also</u> <u>Aro Mfg. Co. v. Convertible Top Replacement Co.</u>, 377 U.S. 476, 507 (1964).

The jury was only instructed that "[t]he first question is whether the Plaintiff in fact did lose such collateral sales" and was not instructed that not all "upsells" or add-ons were proper bases for the award of lost profits.  (<u>See</u> Trial Tr., 37:7-14, February 28, 2008, Session 2.)  The jury then improperly considered the issue of collateral sales, as the special verdict form included the note "colateral sales" [sic] handwritten by a juror.  (<u>See</u> Docket # 287 at 6.)  Especially because Limelight contends that Akamai's business plan is based on "premium" add-ons that are purchased as a matter of convenience and based on Akamai's business advantage, a new trial is appropriate in light of this omission.  (<u>See</u> Trial Tr., 69:3-7, February 26, 2008, Session 1 (Akamai's product includes "bells and whistles"); Trial Tr., 116:19 - 117:6, February 20, 2008 (Akamai's expert admits "premium" pricing).)

     **E.**     **A New Trial is Necessary Because the Answer Provided to the Jury's Question During Deliberations Was Improper.**

A new trial is appropriate because the jury was improperly instructed to cut off its review of evidence that would have provided the proper understanding of how Limelight's CDN system operates, based on the evidence submitted at trial.  While deliberating, the jury submitted a written question to the Court, asking, "Is prior art only to be considered in questions of validity? (can it be used in determination of infringement?)"  The jury was instructed that "prior art is relevant and to be considered in deciding the issues of anticipation and obviousness.  As for infringement, Limelight did argue that it uses known internet [sic] protocols which may be

deemed to be prior art, but the question remains whether its method nonetheless infringes any claims." That instruction was misleading and legally incorrect.

Because it is undisputed that Limelight's CDN system utilizes "well known Internet protocols" such as CNAME, Anycast, BGP, and BIND, an instruction that prior art is "relevant and to be considered in deciding" validity issues, but not infringement issues (which is what the jury's question asked) was incorrect and highly prejudicial. As part of its deliberation, the jury was provided with binders containing the prior art, which included Internet protocols such as RFCs from the Internet Engineering Task Force regarding Anycast (DX 29), DNS and CNAMEing (DX 30), DNS Support for Load Balancing (DX 159), and BGP (DX 167). The trial testimony from Limelight's witnesses was that the accused Limelight system utilizes and operates according to the protocols set forth in the RFCs. (See Trial Tr., 18:22 - 19:20, February 21, 2008 (Limelight uses Anycast which has been around "since 1993"); Trial Tr., 82:5-24, February 21, 2008 (earlier pre-2005 Limelight system used BIND, Anycast, and CNAMEing because "that's just the way the Internet works"); Trial Tr., 32:5 - 33:12, February 22, 2008 (Limelight uses BGP, which stems from the 1980s, and Anycast, which has been around since 1993); Trial Tr., 38:25 - 39:22, February 22, 2008 (Limelight DNS operates like regular Internet DNS, is not an "intelligent DNS").)

Despite this evidence, the jury was told, in effect, that it could not read a definitive document about Anycast, for example, to understand how Anycast worked in connection with the claims of the '703 Patent. The answer given to the jury effectively stated that the jury **could not use the RFCs or other prior art to help it understand the accused Limelight system** when comparing Limelight's system to the limitations of the claims for purposes of infringement. The answer undermined Limelight's argument that Limelight was simply using

24

the Internet the way the Internet normally works, since the jury was told that they could not

consider prior art (which includes, for example, the way the Internet worked before July 1998) in

connection with their determination on infringement.

Before the jury concluded its deliberations, Limelight submitted a proposed supplemental

answer to correct any misimpression:

> In further response to your question, you may use and consider the prior art (e.g., the RFCs) in order to help you understand how Limelight's content delivery system works (e.g., Anycast and CNAMEing).

(Docket # 286.)  This instruction was necessary to correct the statement made in response to the

jury's question, which in context said that these materials could not be used to assist the jury in

understanding how the Limelight system works.  The Court declined to provide this

supplemental instruction to the jury, which Limelight filed at 9:16 am on February 29, 2008.

The jury continued deliberating and did not reach a verdict until the afternoon of that day.

These hours may have been critical to the jury's determination of infringement.[6]

Because an explanation and understanding of the operations of the Limelight system is

integral to Limelight's infringement defense, Limelight was substantially prejudiced by the

Court's refusal to instruct the jury that it could consider the prior art in understanding

Limelight's system.  The answer was also highly confusing and tantamount to a miscarriage of

justice given the Court's previous instruction to the jury that Limelight contended it "relies on

well-known Internet protocols."  (Trial Tr., 12:21-24, February 28, 2008, Session 2.)  A new trial

---

[6]   At 9:26am, the jury submitted a second question asking "Is there are distinction between C-naming [sic] and 'the C-name [sic] method' as used in question 2?," which indicates that the jury was still evaluating infringement.

is the only appropriate remedy.  See Seachange, 413 F.3d at 1381-382; see also Levin, 459 F.3d at 77-78; Cerqueira, 2008 WL 104105 at *11-13; Phav, 915 F.2d at 766.

> **F.    A New Trial is Necessary as an Alternative if Judgment as a Matter of Law is Not Granted.**

Limelight concurrently files herewith its Memoranda in Support of its Motion for Judgment as a Matter of Law and Motion for Judgment of Obviousness.  To the extent that the Court does not agree that the jury's findings must be overturned as a matter of law, the Court should grant a new trial.  See Kearns v. Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir. 1988) (affirming grant of new trial); see also Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1186-88 (Fed. Cir. 2002) (affirming grant of new trial on issues of enablement and obviousness based on conclusion that jury's verdict of invalidity was against weight of the evidence); Wright and Miller, Fed. Prac. & Proc. Civ.3d § 2539 (2008) (in many instances trial judge may grant a new trial to a losing party on grounds that the verdict is against the weight of the evidence even though the judge is constrained to refuse to order entry of judgment).

Because the Court may weight the evidence, "[a] new trial may be granted even when judgment [as a matter of law] is inappropriate."  Brennan, 350 F.3d at 430; see also Manley, 337 F.3d at 244-45.  Thus, for any of the additional grounds not addressed here that are in Limelight's JMOL motion, a new trial is warranted.

IV.     **CONCLUSION**

For the foregoing reasons, Limelight respectfully requests that the Court grant its

Motions for Judgment as a Matter of Law under Fed. R. Civ. P. 50 that Limelight does not

infringe the '703 Patent, or that (if found to be infringed) the asserted claims are invalid, or in the

alternative, grant Limelight a new trial pursuant to Fed. R. Civ. P. 50 and/or 59.

DATED: March 21, 2008                        Respectfully submitted,

                                             LIMELIGHT NETWORKS, INC.

                                             By its attorneys,

                                             /s/   Robert G. Krupka
                                                   Robert G. Krupka (pro hac vice)
                                                   Alexander F. MacKinnon (pro hac vice)
                                                   Kirkland & Ellis LLP
                                                   777 South Figueroa Street
                                                   Los Angeles, California 90017
                                                   Telephone:  (213) 680-8400
                                                   Facsimile:  (213) 680-8500

                                                   Daniel K. Hampton (BBO #634195)
                                                   Holland & Knight LLP
                                                   10 St. James Avenue, 11th Floor
                                                   Boston, MA, 02116
                                                   Telephone:  (617) 523-2700
                                                   Facsimile:  (617) 523-6850

                                             Attorneys for Defendant
                                             Limelight Networks, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2008, a copy of **LIMELIGHT NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 50 AND 59 [LEAVE TO FILE GRANTED 4/23/2008]** was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, via first class mail.


/s/ Robert G. Krupka
Robert G. Krupka