UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AKAMAI TECHNOLOGIES, INC., and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiffs,<br><br>vs.<br><br>LIMELIGHT  NETWORKS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 06-cv-11109 RWZ

**PLAINTIFF AKAMAI TECHNOLOGIES, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR AN ACCOUNTING OF
<u>SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST</u>**

# **TABLE OF CONTENTS**

I.   THE COURT SHOULD ORDER AN ACCOUNTING AND AWARD
     AKAMAI SUPPLEMENTAL DAMAGES ON INFRINGING SALES NOT
     INCLUDED IN THE JURY'S VERDICT ........................................................................ 3

     A.   Legal Standard ................................................................................................ 3

     B.   Akamai Is Entitled To Supplemental Damages For The Period
          Between  January 1, 2008 And The Date That Judgment In Its Favor
          Or A Permanent Injunction Is Entered.................................................................. 4

     C.   If Limelight Disputes The Amount Of Post-Verdict Damages, It
          Should Expeditiously Produce Relevant Evidence As Part Of The
          Requested Accounting So That Its Assertions May Be Verified........................... 6

II.  AKAMAI IS ENTITLED TO PREJUDGMENT INTEREST ON ALL
     DAMAGES UNTIL THE DATE JUDGMENT IS ENTERED ........................................ 7

     A.   Prejudgment Interest Should Be Awarded At The Prime Rate,
          Compounded Annually ........................................................................................ 8

     B.   The Prejudgment Interest Period Extends Until The Court Enters Final
          Judgment On The Jury Verdict In Favor Of Akamai .......................................... 10

     C.   Calculation Of Total Of Jury Award, Admitted Post-Verdict Damages,
          And Prejudgment Interest Due To Akamai ......................................................... 12

III. THE COURT SHOULD ENHANCE AKAMAI'S SUPPLEMENTAL
     DAMAGES.................................................................................................................... 13

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
   2005 U.S. Dist. LEXIS 12899 (N.D. Ill. June 9, 2005) .........................................................4, 5

*Affiliated Capital Corp. v. City of Houston*,
   793 F.2d 706 (5th Cir. 1986) ..................................................................................................12

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   786 F.3d 899 (Fed. Cir. 2015).............................................................................................2, 11

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015)................................................................................................3

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   805 F.3d 1368 (Fed. Cir. 2015)................................................................................................3

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008).........................................................................................4, 14

*Andrew Corp. v. Gabriel Elecs., Inc.*,
   785 F. Supp. 1041 (D. Me. 1992) .............................................................................................9

*Applera Corp. v. MJ Research, Inc.*,
   2005 U.S. Dist. LEXIS 36589 (D. Conn. Aug. 29, 2005) ......................................................12

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
   807 F.2d 964 (Fed. Cir. 1986)..................................................................................................8

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   2014 U.S. Dist. LEXIS 43042 (W.D. Pa. Mar. 31, 2014) ......................................................14

*Energy Transp. Grp., Inc. v. William Demant Holdings A/S*,
   697 F.3d 1342 (Fed. Cir. 2012)................................................................................................8

*Ericsson, Inc. v. Harris Corp.*,
   146 Fed. Appx. 476 (Fed. Cir. 2005)................................................................................11, 12

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010).......................................................................................3, 4, 5

*Foley v. Lowell*,
   948 F.2d 10 (1st Cir. 1991)......................................................................................................10

*Fryer v. A.S.A.P. Fire & Safety Corp.,*
  758 F. Supp. 2d 29 (D. Mass. 2010) ...................................................................10

*Gen. Motors Corp. v. Devex Corp.,*
  461 U.S. 648 (1983)...................................................................................8, 10

*Hynix Semiconductor Inc. v. Rambus Inc.,*
  609 F. Supp. 2d 951 (N.D. Cal. 2009) .................................................................4

*Immersion Corp. v. Sony Computer Entm't Am., Inc.,*
  2005 U.S. Dist. LEXIS 4777 (N.D. Cal. Jan. 10, 2005) ..........................................7

*Kaiser Alum. & Chem. Corp. v. Bonjorno,*
  494 U.S. 827 (1990)...............................................................................11, 12

*Ministry of Def. & Support v. Cubic Def. Sys.,*
  665 F.3d 1091 (9th Cir. 2011) ...........................................................................11

*Muniauction, Inc. v. Thomson Corp.,*
  532 F.3d 1318 (Fed. Cir. 2008)............................................................................2

*Nickson Indus., Inc. v. Rol Mfg. Co.,*
  847 F.2d 795 (Fed. Cir. 1988)...........................................................................10

*NTP, Inc. v. Research in Motion, Ltd.,*
  270 F. Supp. 2d 751 (E.D. Va. 2003) ...................................................................9

*Oscar Mayer v. Conagra,*
  869 F. Supp. 656 (W.D. Wis. 1994) ....................................................................4

*Paice LLC v. Toyota Motor Corp.,*
  609 F. Supp. 2d 620 (E.D. Tex. 2009) ................................................................14

*Pall Corp. v. Micron Separations, Inc.,*
  792 F. Supp. 1298 (D. Mass. 1992) ..................................................................8, 9

*Penn Terra Ltd. v. Dep't of Envtl. Res.,*
  733 F.2d 267 (3rd Cir. 1984) .............................................................................11

*Radford Trust v. First Unum Life Ins. Co. of Am.,*
  491 F.3d 21 (1st Cir. 2007)................................................................................11

*Read Corp. v. Portec, Inc.,*
  970 F.2d 816 (Fed. Cir. 1992)...........................................................................13

*Sealant Sys. Int'l v. TEK Global S.R.L.,*
  2014 U.S. Dist. LEXIS 31528 (N.D. Cal. Mar. 7, 2014).........................................9

*Stryker Corp. v. Davol, Inc.*,
   75 F. Supp. 2d 746 (W.D. Mich. 1999) ................................................................15

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   2011 U.S. Dist. LEXIS 74337 (E.D. Tex. July 11, 2011).........................................7

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013).................................................................3, 4, 13, 14

*Transamerica Life Ins. v. Lincoln Nat'l Life Ins.*,
   2009 U.S. Dist. LEXIS 54889 (N.D. Ia. June 19, 2009).........................................12

*Transmatic, Inc. v. Gulton Indus.*,
   180 F.3d 1343 (Fed. Cir. 1999).............................................................................10

*TruePosition Inc. v. Andrew Corp.*,
   2009 U.S. Dist. LEXIS 49832 (D. Del. June 10, 2009)...........................................7

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   939 F.2d 1540 (Fed. Cir. 1991)...............................................................................9

*Veracode, Inc. v. Appthority, Inc.*,
   2015 U.S. Dist. LEXIS 132919 (D. Mass. Sept. 30, 2015) ...........................4, 5, 8, 9

*WBIP, LLC v. Kohler Co.*,
   2014 U.S. Dist. LEXIS 17717 (D. Mass. Feb. 12, 2014) .........................................9

**Statutes**

28 U.S.C. § 1961.............................................................................................10, 11

35 U.S.C. § 271(a) .................................................................................................2

35 U.S.C. § 284..................................................................................3, 7, 13, 15

**Other Authorities**

Order: (1) .............................................................................................................15

U.S. Patent No. 6,108,703...........................................................................1, 2, 15

Akamai Technologies, Inc. ("Akamai") submits this memorandum in support of its motion for an accounting and an award of supplemental damages and prejudgment interest up through the date judgment enters for Akamai.

Limelight's infringement of Akamai's U.S. Patent No. 6,108,703 (the "'703 patent") began a decade ago.  After a three-week trial in February of 2008, a jury found that Limelight had infringed all of the asserted claims of the '703 patent and that those claims were not invalid. It concluded that Akamai suffered damages of $45.5 million through the period ended December 31, 2007.  But Limelight admits that it continued infringing the '703 patent even after the jury verdict in this case, and that its post-verdict infringing conduct resulted in approximately $16 million in additional post-verdict damages in 2008, not including prejudgment interest.  Akamai should be allowed to determine the extent and duration of Limelight's infringing conduct and should be awarded the damages resulting from Limelight's continued infringement.

The jury also found that Akamai is entitled to prejudgment interest.  Both of the parties' damages experts agreed with each other regarding the appropriate rate and compounding of that interest.  The current interest on the jury's award and the post-verdict damages admitted by Limelight is approximately $21.5 million.  Akamai's pre- and post-verdict damages, together with pre-judgment interest on those damages, therefore, will exceed $80 million.

It has been a decade since Limelight began its infringement, and almost eight years since Akamai was awarded damages by the jury.  Given this long wait, Akamai respectfully requests that the Court expedite its determination of supplemental damages and then enter judgment in favor of Akamai so that Akamai – finally – may be compensated for Limelight's infringement.

## **BACKGROUND**

This is a patent infringement action involving "innovative technology" for delivering content over the Internet using a content delivery network (CDN) "without which the Internet as

we know it today would not exist." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 786 F.3d 899, 916-17 (Fed. Cir. 2015) (Moore, J., dissenting).  This action was commenced in June 2006, nine and one-half years ago.

Following a three week jury trial in February 2008, Akamai (1) prevailed on the issue of infringement with respect to each of the four asserted claims of the '703 patent; (2) prevailed on each of Limelight's five theories of patent invalidity; and (3) was awarded $45,526,946 in damages.  These damages were awarded for the period at issue at the time of the trial: April 2005 through December 31, 2007.  The jury also found that Akamai was entitled to prejudgment interest.  Dkt. No. 287 (Special Verdict Form).

Having prevailed on every issue at the jury trial, Akamai then prevailed on Limelight's initial post-trial motions for Judgment as a Matter of Law (JMOL).  Dkt. No. 376.  In November 2008, the Court held a bench trial at which Akamai prevailed on (a) the issue of inequitable conduct and (b) Limelight's laches, equitable estoppel, and unclean hands defenses.

Several weeks after the Court's denial of Limelight's initial JMOL motion, the Federal Circuit issued its decision in *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008), which addressed the scope of joint infringement liability under 35 U.S.C. § 271(a). Limelight filed a renewed JMOL motion based on *Muniauction.*  The Court then granted JMOL of non-infringement and entered judgment for Limelight.  Dkt. Nos. 422, 429.  That judgment was the only judgment that has been entered in this case.

Akamai appealed, and there ensued six years of appellate review through multiple panels and *en banc* sittings of the Federal Circuit, and the Supreme Court, which focused primarily on the Court's grant of JMOL for Limelight on the issue of joint infringement.

On August 13, 2015, the Federal Circuit, sitting *en banc,* issued a decision clarifying the joint infringement standard and ordering reinstatement of the jury verdict in favor of Akamai. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1025 (Fed. Cir. 2015). On November 16, 2015, a panel of the Federal Circuit rejected each of Limelight's previously-unaddressed appellate arguments, including its challenges to Akamai's damages theory. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368 (Fed. Cir. 2015).

On December 23, 2015, the Federal Circuit issued its mandate to this Court to reinstate the jury's verdict in accordance with its judgment entered November 16, 2015. Dkt. No. 455.

## ARGUMENT

I.     **THE COURT SHOULD ORDER AN ACCOUNTING AND AWARD AKAMAI SUPPLEMENTAL DAMAGES ON INFRINGING SALES NOT INCLUDED IN THE JURY'S VERDICT.**

The jury awarded Akamai $45,526,946 in damages for the period from April 2005 to December 31, 2007. Further, Akamai is entitled, *inter alia*, to supplemental damages for Limelight's infringement from January 1, 2008 through the date that final judgment in its favor, or a permanent injunction, is entered. As recognized by the Federal Circuit, a plaintiff is not "'fully compensated' unless the damages award includes sales following the verdict," and "35 U.S.C. § 284 requires the court to assess damages when they are not found by a jury." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1384 (Fed. Cir. 2013) (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) ("[A] patentee is not fully compensated if the damages award did not include future lost sales.")).

A.     **Legal Standard.**

Section 284 also provides that "[w]hen the damages are not found by a jury, the court shall assess them." 35 U.S.C. § 284. "Supplemental damages are permitted – and indeed required – under 35 U.S.C. § 284, which requires that the court award damages 'adequate to

compensate' the plaintiff for the infringement . . . ." *Veracode, Inc. v. Appthority, Inc.*, 2015 U.S. Dist. LEXIS 132919, at *144 (D. Mass. Sept. 30, 2015) (Woodlock, J.); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 961 (N.D. Cal. 2009) ("Permitting recovery of such supplemental damages serves section 284's expressed interest in providing damages 'adequate to compensate for the infringement.'").

The Federal Circuit has consistently held that "the amount of supplemental damages following a jury verdict is a matter committed to the sound discretion of the district court.'" *SynQor, Inc.*, 709 F.3d at 1385 (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008)). When determining the proper amount of supplemental damages, courts routinely apply the jury's damages calculations to post-verdict infringing sales. *See, e.g.*, *Veracode, Inc.*, 2015 U.S. Dist. LEXIS 132919, at * 146 ("Typically, supplemental damages are calculated based on the jury's damages verdict."); *Oscar Mayer v. Conagra*, 869 F. Supp. 656 (W.D. Wis. 1994) (awarding supplemental damages for post-judgment infringing sales at the ratio of damages to infringing sales as determined by reference to the jury's verdict); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 2005 U.S. Dist. LEXIS 12899, at *6 (N.D. Ill. June 9, 2005). That same approach should be used in the present case.

> **B.    Akamai Is Entitled To Supplemental Damages For The Period Between January 1, 2008 And The Date That Judgment In Its Favor Or A Permanent Injunction Is Entered.**

As noted above, the jury's award of approximately $45.5 million in damages only encompassed damages from April 2005 through December 31, 2007. Dkt. No. 287. Akamai is now entitled to supplemental damages incurred as a result of Limelight's continuing infringement after January 1, 2008. *See Finjan, Inc.*, 626 F.3d at 1213.

Limelight has acknowledged that its infringing conduct continued for a period of time after the jury verdict.  In its 10-Q filing for the quarter ending September 30, 2008, Limelight stated:

> For the three and nine month periods ended September 30, 2008, the Company estimated its revenue from alleged infringing methods totaled approximately 11% and 34% of its total revenue. The Company recorded *a potential additional damage liability totaling $1.6 million and $14.8 million, respectively. . .*

Edgarton Decl., Ex. 1[1] (emphasis supplied).  Consistent with these statements, Limelight's recent public filings state that "[d]uring 2008, we recorded a potential additional provision of approximately $17,500[,000] for potential additional infringement damages *and interest*."  *Id.*, Ex. 2.   Thus, by Limelight's own calculations and admissions, Akamai is entitled to approximately $16 million of supplemental damages for Limelight's continued post-trial infringement in 2008 alone, not including prejudgment interest.

Akamai's right to supplemental damages is not, however, limited to the $14.8 million that Limelight admits accumulated in the first three quarters of 2008 and the approximately $1.2 million in additional damages Limelight's public filings evidence accrued in the fourth quarter of 2008.  Edgarton Decl., Exs. 1,  2, and 4; Ugone Decl., ¶¶ 5-8.  Rather, Akamai is entitled to supplemental damages for Limelight's continuing infringement from January 1, 2008 through the entry of a judgment or permanent injunction.  *See Finjan, Inc.*, 626 F.3d at 1213.

The Court should determine the appropriate amount of supplemental damages by applying the jury's verdict to Limelight's post-verdict infringing sales.  *See Veracode, Inc.*, 2015 U.S. Dist. LEXIS 132919, at *146; *Aero Prods. Int'l, Inc.*, 2005 U.S. Dist. LEXIS 12899, at *6. The Court should compare the amount of revenue identified by Akamai as infringing at trial with

---

[1] "Edgarton Decl." refers to the Declaration of G. Mark Edgarton, Esq., filed contemporaneously herewith.

the jury's actual damage award.  The resulting percentage relationship may then be applied to Limelight's post-verdict revenues attributable to continuing infringement.

The jury awarded Akamai 47.2% of what Akamai claimed at trial was Limelight's infringing revenue.  Ugone Decl., ¶ 5.[2]  When Limelight produces updated financial information reflecting all revenues attributable to its post-verdict infringing conduct, the calculation of the proper amount of supplemental damages will then be a simple arithmetic exercise.  The Court need only multiply Limelight's post-verdict infringing revenues by 47.2%.

Akamai, therefore, respectfully requests an accounting and award of post-verdict damages consistent with the jury's prior calculations.

C.     **If Limelight Disputes The Amount Of Post-Verdict Damages, It Should Expeditiously Produce Relevant Evidence As Part Of The Requested Accounting So That Its Assertions May Be Verified.**

Based on statements in Limelight's public filings (as well as correspondence between counsel for the parties in 2009), Akamai believes that Limelight will contend that it made certain changes to its system in 2008 that Limelight alleges caused it to stop infringing.  For example, during an Earnings Call on August 12, 2008, Limelight's then-Chief Financial Officer, Matthew Hale, stated that Limelight expected "the percentage of alleged and infringing revenue to decrease substantially as [Limelight] continue[s] to take *specific technical and operational steps* to mitigate the financial impact going forward."  Edgarton Decl., Ex. 3.

The "specific technical and operational steps" allegedly taken by Limelight in 2008 to cease the conduct found to infringe at trial remain unproven.  As a result, Akamai cannot determine whether any changes made by Limelight were sufficient to stop the running of damages.  Furthermore, even if Limelight did initially make changes that ceased its infringement

---

[2] "Ugone Decl." refers to the Declaration of Keith R. Ugone, Ph.D. in Support of Akamai Technologies, Inc.'s Motion for an Accounting of Supplemental Damages and Prejudgment Interest, filed simultaneously herewith.

– which Akamai does not concede – Limelight has not established that it maintained those same "technical and operational steps" after the jury verdict was reversed.  Limelight has not proven, except for the post-verdict conduct that it admitted, the nature, extent or timing of how the Limelight system was changed after the jury verdict, or whether any such changes were sufficient to cease infringement.  To the extent Limelight relies on assertions of this type in opposition to the instant motion, Akamai should be allowed to test Limelight's assertions through expedited discovery.

As part of the accounting now requested by Akamai, Limelight should be ordered to produce documents, and permit oral discovery, that will allow an identification of all revenues attributable to the continued use of its infringing method of Internet content delivery, and the facts and circumstances surrounding Limelight's purported efforts to decrease the amount of customer traffic delivered using infringing methods.  *See SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 U.S. Dist. LEXIS 74337 (E.D. Tex. July 11, 2011) (awarding supplemental damages after court-ordered, post-verdict discovery demonstrated 17,000 additional sales of infringing device); *Immersion Corp. v. Sony Computer Entm't Am., Inc.*, 2005 U.S. Dist. LEXIS 4777, at *27-28 (N.D. Cal. Jan. 10, 2005) ("In order to enable Immersion to calculate the fee, the Court granted Immersion's request for supplemental discovery"); *TruePosition Inc. v. Andrew Corp.,* 2009 U.S. Dist. LEXIS 49832, at *3 (D. Del. June 10, 2009) (permitting additional discovery regarding defendant's post-verdict infringement and a post-trial accounting of damages).

## II.    AKAMAI IS ENTITLED TO PREJUDGMENT INTEREST ON ALL DAMAGES UNTIL THE DATE JUDGMENT IS ENTERED.

35 U.S.C. § 284 expressly authorizes a prevailing patent owner to recover prejudgment interest:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a

reasonable royalty for the use made of the invention by the infringer, *together with interest* and costs as fixed by the court.

(emphasis added).   Here, the jury expressly found that Akamai is entitled to prejudgment interest.   *See* Dkt. No. 287.   The Supreme Court has held that prejudgment interest on patent infringement damages should be awarded to a patentee absent a compelling reason for denying such interest.   *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983).   Prejudgment interest compensates a patentee "not only [for] the value of the [damages] payments but also [for] the forgone use of the money between the time of infringement and the date of the judgment."   *Id.*   Thus, in patent infringement cases, an award of prejudgment interest is "the rule, not the exception."   *Energy Transp. Grp., Inc. v. William Demant Holdings A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012); *see also, e.g.*, *Veracode, Inc.*, 2015 U.S. Dist. LEXIS 132919, at *155 ("[P]rejudgment interest should ordinarily be awarded[.]") (quoting *Gen. Motors*, 461 U.S. at 657); *Pall Corp. v. Micron Separations, Inc.*, 792 F. Supp. 1298, 1331 (D. Mass. 1992), *rev'd in part on other grounds*, 66 F.3d 1211 (Fed. Cir. 1995) ("[P]rejudgment interest should be awarded both on the lost profits and reasonable royalty portions of the damage award.").

## A.   Prejudgment Interest Should Be Awarded At The Prime Rate, Compounded Annually.

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court."   *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).   In exercising its discretion, the Court "must be guided by the purpose of prejudgment interest," which is to fully compensate the patent owner for deprivation of profits or a royalty over time.   *Id.*

Both parties' damages experts used the prime rate to calculate prejudgment interest in their expert reports and at trial.   *See* Edgarton Decl., Ex. 5 (Vellturo Trial Testimony) ("I accepted the approach that Akamai had taken as to what rate to use.").   The prime rate – the base

rate charged by banks for short-term debt that is likely to be repaid by credit-worthy customers – is readily ascertainable, market-based, and widely accepted as a reasonable estimate of the interest rate necessary to compensate a patent holder for the forgone use of monetary damages. *See, e.g.*, *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (district court "may award interest at or above the prime rate"); *WBIP, LLC v. Kohler Co.*, 2014 U.S. Dist. LEXIS 17717, at *24 (D. Mass. Feb. 12, 2014) (awarding prejudgment interest to patent holder at the prime rate); *Pall Corp.*, 792 F. Supp. at 1331 (same). Indeed, the prime rate (currently at 3.5%) is a conservative figure, and courts frequently award prejudgment interest at far higher rates. *See, e.g.*, *Veracode Inc.*, 2015 U.S. Dist. LEXIS 132919, at *156 (awarding patent holder prejudgment interest at Massachusetts statutory rate of 12%). The Court should endorse the parties' agreement and fix the prime rate as the appropriate rate of prejudgment interest.

Similarly, both Akamai and Limelight's experts employed annual compounding in calculating prejudgment interest in their pre-trial expert reports and at trial. *See* Edgarton Decl., Ex. 5. "Courts have recognized that compounding [prejudgment interest] is necessary to fully compensate the patentee." *Sealant Sys. Int'l v. TEK Global S.R.L.*, 2014 U.S. Dist. LEXIS 31528, at *25 (N.D. Cal. Mar. 7, 2014), *rev'd in part on other grounds by* 2015 U.S. App. LEXIS 9725 (Fed. Cir. June 11, 2015) (citations omitted); *see also* Ugone Decl., ¶ 11. Annual compounding is an accepted – though very conservative – method of calculating prejudgment interest. *See, e.g.*, *Sealant Sys.*, 2014 U.S. Dist. LEXIS 31528, at *134 (awarding prejudgment interest at prime rate compounded annually); *and compare, e.g.*, *Uniroyal*, 939 F.2d at 1545 (prime rate compounded <u>daily</u>); *Andrew Corp. v. Gabriel Elecs., Inc.*, 785 F. Supp. 1041, 1054-55 (D. Me. 1992) (prime rate compounded <u>monthly</u>) *NTP, Inc. v. Research in Motion, Ltd.*, 270

F. Supp. 2d 751, 763 (E.D. Va. 2003) (deeming prime rate compounded <u>quarterly</u> "a conservative, middle-of-the-road approach").

There is no need, nor any reason, for the Court to deviate from the opinions of both parties' damages experts. The Court should award Akamai prejudgment interest on Akamai's damages at the prime rate, compounded annually.

### B. The Prejudgment Interest Period Extends Until The Court Enters Final Judgment On The Jury Verdict In Favor Of Akamai.

Prejudgment interest should be awarded "from the date of infringement to the date of judgment." *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citing *Gen. Motors*, 461 U.S. at 656). Because the Court has never entered a final judgment on the jury's award in favor of Akamai, prejudgment interest continues to accrue on Akamai's damages. It will continue to accrue until this Court enters judgment in Akamai's favor.

28 U.S.C. § 1961 states that *postjudgment* interest "shall be calculated from *the date of the entry of the judgment*." 28 U.S.C. § 1961(a) (emphasis added). The Federal Circuit has held that, "clearly, the 'date of entry of judgment' [referenced in § 1961] demarcates the boundary between pre- and postjudgment interest." *Transmatic, Inc. v. Gulton Indus.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999) (noting that "[t]he determination of that date is a matter of general procedural, not patent, law").

The First Circuit has ruled that "the date of final judgment must serve as the end date in the prejudgment interest tabulation." *Foley v. Lowell*, 948 F.2d 10, 22 (1st Cir. 1991); *see also Fryer v. A.S.A.P. Fire & Safety Corp.*, 758 F. Supp. 2d 29, 32 (D. Mass. 2010) ("The statutory language using the word 'judgment' establishes that it is a judgment as opposed to a jury *verdict* that provides the applicable date to calculate postjudgment interest on a verdict.") (emphasis in

original); *Kaiser Alum. & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 837 (1990) ("[P]ostjudgment interest [under § 1961] properly runs from the date of the entry of judgment.").

Moreover, as the use of the term "money judgment" in § 1961 indicates, the event that ends the period of prejudgment interest and begins the period of postjudgment interest is a judgment that specifies the amount of damages to be awarded to the plaintiff.  Under § 1961, "a money judgment consists of two elements: '(1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant.'"  *Ministry of Def. & Support v. Cubic Def. Sys.*, 665 F.3d 1091, 1101 (9th Cir. 2011) (emphasis in original) (quoting *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 275 (3rd Cir. 1984)). "The existence of a 'money judgment' under section 1961(a) requires damages to have been ascertained in a 'meaningful way'" in order to trigger the end of the prejudgment interest period and the beginning of the statutory postjudgment interest period. *Id.; Radford Trust v. First Unum Life Ins. Co. of Am.*, 491 F.3d 21, 24 (1st Cir. 2007) (quoting *Kaiser Alum.*, 494 U.S. at 836).

As noted above, the only prior judgment entered in this case – the Court's Order of May 22, 2009 granting JMOL in favor of *Limelight* – plainly did not constitute a "money judgment" that ascertained damages for Akamai, let alone ascertaining them in a "meaningful way."  *See Kaiser Alum.*, 494 U.S. at 836; *Radford Trust*, 491 F.3d at 24; *Ministry of Def. & Support*, 665 F.3d at 1091.  *Ericsson, Inc. v. Harris Corp.*, 146 Fed. Appx. 476, 480 (Fed. Cir. 2005) (unpublished) is on point.  In *Ericsson*, the plaintiff obtained a jury verdict awarding damages for patent infringement.  *Id.* at 477, 479.  The district court granted (and entered judgment on) *defendant's* post-trial motion for judgment as a matter of law ("*Ericsson I*").  *Id.*  After several years of appeals, the Federal Circuit ordered that the jury verdict be reinstated ("*Ericsson II*").

*Id.* at 478. On remand, the district court entered judgment for the plaintiff ("*Ericsson III*"), and allowed prejudgment interest to accrue through the date of the judgment in favor of the plaintiff. *Id.* at 479. The defendant appealed, arguing that prejudgment interest should have only accrued through the date of the jury's verdict. *Id.* The Federal Circuit, following *Kaiser Aluminum*, affirmed the district court's holding:

> The damages awarded in *Ericsson III* were hardly ascertainable from the judgment [in favor of the defendant] entered in *Ericsson I*. Indeed, the judgment in *Ericsson I* did not even contain any damages award because [defendant] was held not liable for infringement. Only when the district court entered the judgment on remand in *Ericsson III* did the damages award become meaningfully ascertainable.

*Ericsson, Inc.*, 146 Fed. Appx. at 480 (citing *Kaiser Alum.*, 494 U.S. at 836). *See also, e.g.*, *Affiliated Capital Corp. v. City of Houston*, 793 F.2d 706 (5th Cir. 1986) (where jury's verdict was taken away by judgment notwithstanding the verdict and later reinstated on remand, district court properly awarded postjudgment interest from date of remand judgment); *Transamerica Life Ins. v. Lincoln Nat'l Life Ins.*, 2009 U.S. Dist. LEXIS 54889, at *12 (N.D. Ia. June 19, 2009) (applying *Kaiser Alum.* to award patentee prejudgment interest through entry of final judgment five months after jury verdict); *Applera Corp. v. MJ Research, Inc.*, 2005 U.S. Dist. LEXIS 36589, at *3 (D. Conn. Aug. 29, 2005) (awarding patentee prejudgment interest through entry of final judgment one year after jury verdict).

Akamai is entitled to prejudgment interest from April 2005 (the beginning of Limelight's infringement) through entry of final judgment on the jury's verdict.

### C. Calculation Of Total Of Jury Award, Admitted Post-Verdict Damages, And Prejudgment Interest Due To Akamai.

Based on both Limelight's public filings and other information provided by Limelight, Akamai's expert has calculated the total of the jury award, the amount of post-verdict damages admitted by Limelight, and prejudgment interest at the prime rate, compounded annually, on the

jury's award and on the post-verdict infringement damages for 2008 to which Limelight has admitted (which may not be complete) as follows:

| | Damages (in $ million) | Prejudgment Interest (in $ million) | Total (in $ million) |
|---|---|---|---|
| Lost Profits and Reasonable Royalty Damages | $57.5 | $20.3 | $77.8 |
| Price Erosion Damages | $ 4.0 | $ 1.2 | $ 5.2 |
| **Total** | **$61.5** | **$21.5** | **$83.0** |

Ugone Decl., ¶ 12.

The calculation does not include additional prejudgment interest on supplemental damages for Limelight's post-verdict infringement that may be required once Limelight has provided the additional information described above in Section I.C.

## III.   THE COURT SHOULD ENHANCE AKAMAI'S SUPPLEMENTAL DAMAGES.

Akamai's total supplemental damages should be enhanced due to Limelight's willful infringement during – at the very least – the 14-month period between the jury's verdict of infringement in February 2008 and the Court's grant of Limelight's renewed JMOL motion in April 2009.  Here, Akamai seeks a doubling of the damages it incurred during this period, which amounts to at least an additional $16.0 million based on the supplemental damages calculated by Akamai's expert.  *See* Ugone Decl., ¶ 7.

The Court has discretion to enhance a supplemental damages award upon a finding that continued infringement in the face of an adverse jury verdict was willful.  *See* 35 U.S.C. § 284 ("[T]he court may increase the damages up to three times the amount found or assessed."); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).  The Federal Circuit has endorsed enhancing post-verdict damages.  For example, in *SynQor, Inc.*, the Federal Circuit affirmed the district court's decision to multiply post-verdict damages by 1.75 times because the defendant

continued to sell the infringing product after the jury's verdict. 709 F.3d at 1385. That award was appropriate even where willfulness was not found in the pre-verdict time period and the defendant had non-frivolous pre-verdict defenses to infringement and validity. *Id.* at 1385 ("This court also sees no reason why SynQor's decision not to argue *pre-verdict* willful infringement at trial should preclude the district court from finding willful infringement for *post-verdict* sales.") (emphasis in original). There is a "fundamental difference" between damages for "pre-verdict infringement and damages for post-verdict infringement." *Amado*, 517 F.3d at 1361. "[T]he fact that [a defendant] is an adjudged infringer who chooses to continue infringing simply cannot be ignored." *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 630 (E.D. Tex. 2009).

Limelight made a calculated decision to use the method the jury found to be infringing after the verdict of infringement was returned. It is possible that Limelight did this because immediate cessation of its infringing conduct would have significantly disrupted its business. But even if that were true, such an "infringe now, pay later" strategy is not a justification for continued violation of Akamai's patent rights. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2014 U.S. Dist. LEXIS 43042, at *69 (W.D. Pa. Mar. 31, 2014) (enhanced damages appropriate where defendant "knew what it was doing and deliberately took on both the business and legal risk to continue infringing until it was ordered by the Court to discontinue"). Regardless – and indeed in part *because* – of its commercial motivation, Limelight's intentional disregard of Akamai's patent rights for Limelight's own benefit constituted willful infringement, and provides a sufficient basis for the Court to enhance all such damages. *See, e.g.*, *SynQor, Inc.*, 709 F.3d at 1385 (infringement willful where defendant continued sales of infringing product post-verdict). Moreover, "the hypothetical possibility that [a post-trial motion] might be granted was clearly insufficient to support a good faith belief that continuing sales [] were not

infringing." *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 746, 748 (W.D. Mich. 1999), *aff'd*, 234 F.3d 1252, 1259-60 (Fed. Cir. 2000).

Akamai is entitled to an enhancement of its post-verdict damages due to Limelight's willful post-verdict infringement of Akamai's '703 patent.

### CONCLUSION

For the reasons explained above, Akamai respectfully requests that the Court issue an Order:   (1) requiring an accounting so that the Court may determine the correct amount of supplemental damages to which Akamai is entitled; (2) confirming that Akamai is also entitled to prejudgment interest pursuant to 35 U.S.C. § 284, calculated using the prime rate, compounded annually until the date that the Court enters a judgment in favor of Akamai; and (3) awarding Akamai enhanced damages for Limelight's willful post-verdict infringement.

Respectfully submitted,

AKAMAI TECHNOLOGIES, INC., and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY

By its attorneys,

/s/ Carlos Perez-Albuerne
Robert S. Frank, Jr. (BBO #177240)
Carlos Perez-Albuerne (BBO # 640446)
G. Mark Edgarton (BBO #657593)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000
rfrank@choate.com
cperez@choate.com
medgarton@choate.com

Dated: December 23, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 23, 2015 via electronic mail.

/s/ Carlos Perez-Albuerne
Carlos Perez-Albuerne

7177158v3